**THE RICHMAN LAW GROUP**
Kim E. Richman
krichman@richmanlawgroup.com
81 Prospect Street
Brooklyn, New York 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292

*Attorneys for Plaintiffs and the Proposed Class*
*and Sub-Classes*

*Co-Counsel Listed on Signature Page*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RACHEL TYMAN and JOHNATHAN ROBINSON, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>PFIZER, INC.,<br><br>     Defendant. | Case No.<br><br><br>**CLASS ACTION**<br><br><br>DEMAND FOR JURY TRIAL |

   This is a proposed class action brought by Rachel Tyman and Johnathan Robinson ("Plaintiffs"), on behalf of themselves and all similarly situated individuals, against Pfizer, Inc. ("Pfizer" or "Defendant") seeking redress for Pfizer's unjust, unfair, and deceptive practices in misrepresenting the ingredients and characteristics of certain "Total Hydration" lip balm products sold under the ChapStick® brand, as being "100% NATURAL" and "Clinically Proven" to provide "healthier," "more youthful looking lips." Plaintiffs, individually and on behalf of other similarly situated individuals, allege the following based upon their personal knowledge and the investigation of their counsel:

## INTRODUCTION

1.      The ingredients in lotions, lip balms, and other personal care products are absorbed into the skin, rinsed off into our waterways, or are slowly ingested (through licking lips coated in lip balms). Thus, consumers increasingly demand natural personal care products for their health, the health of their children, and the health of the environment.

2.      In addition to its pharmaceutical products business, Pfizer manufactures a variety of personal care products, including ChapStick brand products, intended for use by infants, children, and adults. Pfizer sells these products directly to consumers and distributes these products to retailers nationwide for sale to consumers.

3.      Pfizer labels certain "Total Hydration" ChapStick brand products (the "Mislabeled ChapStick Products," the "Product," or the "Products")[1] as "100% NATURAL," seeking to profit on consumers' desire to locate and use natural, environmentally sound, safe, and healthy alternatives to standard personal and baby care products. Moreover, Pfizer represents that the "age defying" Mislabeled ChapStick Products are "Clinically Proven" to provide "healthier," "more youthful looking lips," and that they "visibly renew[] lips."

4.      Unfortunately for consumers, Pfizer's "100% NATURAL" representation is false as to the Mislabeled ChapStick Products, because as detailed herein, the Products contain an array of synthetic chemicals.

5.      In addition, there are no competent or reliable studies showing that the Mislabeled ChapStick Products are clinically proven to provide "healthier," "more youthful looking lips."

6.      For example, the Mislabeled ChapStick Products contain synthetic, unnatural

---

[1] Defendant may discontinue offering some Products and regularly introduce new Products that are also mislabeled as "100% Natural." Defendant may also offer other similar "Total Hydration" Mislabeled ChapStick Products for sale of which Plaintiffs are unaware. Plaintiffs will ascertain the identities of these additional Products through discovery.

ingredients, including but not limited to the following:

       a.     Tocopheryl acetate;
       b.     Tocopherols;
       c.     Octyldodecanol;
       d.     Hydrogenated soybean oil;
       e.     Partially hydrogenated soybean oil;
       f.     Caprylic/capric triglyceride; and
       g.     Glyceryl stearate.

7.     This case is not about whether the unnatural ingredients added to the Products are "safe" as personal care product additives. This case is not about whether the ingredients in the Mislabeled ChapStick Products are "naturally sourced" or "naturally derived." This case *is* about whether the Products are "100% NATURAL" as Pfizer has fraudulently claimed. Pfizer's misrepresentations are demonstrably false, as each of these Products contains synthetic ingredients. As a matter of math and common sense, a product cannot be 100% natural if it contains *any* amount of unnatural, highly or chemically processed, synthetic ingredients.

8.     Moreover, it is undeniably deceptive for Pfizer to label the Products as "Clinically Proven" without competent, reliable, and scientifically valid clinical testing showing that the Products provide "healthier," "more youthful looking lips." When a product is labeled "Clinically Proven" to provide certain benefits, reasonable consumers expect that competent, reliable, and scientifically valid clinical testing has been conducted which proves that the products do indeed provide those advertised benefits. Marketing a product as "Clinically Proven" without such clinical proof is deceptive.

9.     Consumers lack the ability to test or independently ascertain the accuracy of a personal care product label, especially at the point of sale. Reasonable consumers must and do rely on the company to honestly report the nature of a product's characteristics or ingredients.

10.     Personal care product companies intend for consumers to rely upon their

representations, and reasonable consumers do in fact so rely. These representations are the only source of information reasonable consumers can use to make decisions concerning whether to buy and use such products.

11.     As a result of its false and misleading labeling, Pfizer was able to sell the Mislabeled ChapStick Products to hundreds of thousands of consumers throughout the United States and to realize sizeable profits.

12.     Pfizer's false and misleading representations and omissions violate state and federal law as detailed more fully below, including New York General Business Law ("GBL") sections 349 and 350; Florida's Deceptive And Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA"); and common law.

13.     By deceiving consumers about the nature, quality, and/or ingredients of the Mislabeled ChapStick Products as detailed herein, Pfizer was able to command a premium price for the Products. Reasonable consumers, including Plaintiffs, paid more for the Products than they would have paid if the Products had been accurately labeled, and/or paid more for the Products than they would have been willing to pay for competing products that were not mislabeled.

14.     Pfizer was also motivated to mislead consumers to take away market share from competing products, thereby increasing its own sales and profits.

15.     Plaintiffs bring this action to stop Pfizer's misleading practices.

## **VENUE AND JURISDICTION**

16.     This Court has personal jurisdiction over Defendant for reasons including, but not limited to, the following: Plaintiffs' claims arise out of Defendant's conduct within the State of New York. Plaintiff Robinson is a citizen of New York. Defendant's corporate headquarters are

located in the State of New York. Furthermore, Defendant maintains an interactive website, which is accessible to citizens in the State of New York, and throughout the United States. Moreover, Defendant's marketing and dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products emanated from and occurred within the State of New York.

17.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), under 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant, and the matter in controversy exceeds the sum of five million dollars, exclusive of interest and costs. Plaintiffs allege that there are at least 100 members in the proposed class and that the matter in controversy is well in excess of five million dollars in the aggregate, exclusive of interest and costs.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), because Defendant's corporate headquarters are located within this District. Venue is also proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims, including Defendant's dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## PARTIES

### Individual and Representative Plaintiffs

19.     Plaintiff Robinson is an individual consumer who, at all times material hereto,

was a citizen of the State of New York. Throughout the Class Period (as defined herein), Plaintiff Robinson viewed the labels and advertising and purchased the Mislabeled ChapStick Products labeled as "100% NATURAL" in the State of New York, including but not limited to the Total Hydration Fresh Citrus variety.

20.     Plaintiff Tyman is an individual consumer who, at all times material hereto, was a citizen of the State of Florida and a resident of Broward County, Florida. Throughout the Class Period, Plaintiff Tyman viewed the labels and advertising and regularly purchased the Mislabeled ChapStick Products labeled as "100% NATURAL" in the State of Florida, including but not limited to the Total Hydration Fresh Citrus variety.

21.     In deciding to purchase the Mislabeled ChapStick Products, Plaintiffs saw and read the "100% NATURAL" and "Clinically Proven" labels, and relied upon those representations in making their purchases. They reasonably believed that the Products labeled "100% NATURAL" were 100% natural, as labeled, and the "100% NATURAL" representation was a significant reason for their purchases. Plaintiffs reasonably believed that the Products labeled "Clinically Proven" were proven through competent, reliable, and scientifically valid clinical testing to provide the advertised benefits, as labeled, and the "Clinically Proven" representation was a significant reason for their purchases. Had Plaintiffs known the representations were false, misleading, and deceptive, they would not have purchased, and would not have paid a premium for, the Products.

22.     If the Products were clinically tested and reformulated such that its labels were truthful and not misleading, Plaintiffs would consider purchasing these Products in the future. At present, however, Plaintiffs cannot be confident that Pfizer's labeling of the Products is, and will be, truthful and non-misleading.

**Defendant**

23.     Defendant Pfizer is a Delaware Corporation and maintains its corporate headquarters in New York, New York.

24.     Pfizer sells the Mislabeled ChapStick Products directly to consumers from its website and distributes the Products to retail outlets throughout New York, Florida, and the United States. Regardless of the geographic location or state of purchase of the Product(s), all Products were mislabeled in the same or substantially similar way.

## COMMON FACTUAL ALLEGATIONS

### PFIZER MARKETS CHAPSTICK AS A TRUSTED BRAND

25.     American consumers increasingly and consciously seek out natural ingredients in their personal care products. Once a small niche market, natural products are now sold by conventional retailers, and their sales continue to soar.

26.     Consumers value natural products for myriad reasons, including perceived benefits of avoiding disease, attaining health and wellness, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values.

27.     Pfizer states that it is "committed to applying science and our global resources to improve health and well-being at every stage of life."[2]

28.     Pfizer claims "Chapstick is part of American life. It's in songs, in pockets, on drawers, in purses, in movies, on TV, on your lips and in your heart."[3]

29.     "100% Natural" is the core of the Pfizer's marketing of the Mislabeled ChapStick

---

[2] http://www.pfizer.com/about (last visited August 26, 2016).

[3] http://www.chapstick.com/lip-culture (last visited August 26, 2016).

Products. Pfizer's focus on "natural" is evident in its partnering with actress Rachel Bilson "as the face of ChapStick Total Hydration 100% Natural."[4] In touting the Products, Rachel Bilson claims, "I love their new **Chapstick Total Hydration** ($3, drugstore.com), which is 100 percent natural, which is really important being a new mom."[5]

## PFIZER FALSELY REPRESENTS THAT THE PRODUCTS ARE "100% NATURAL"

30.     Representing that a product is "100% Natural" is a statement of fact.

31.     On the front of its packages, Pfizer prominently labels the Mislabeled ChapStick Products as "100% NATURAL." This representation is false, as the Products contain ingredients that are artificial, synthetic, or otherwise highly or chemically processed.

32.     The Mislabeled ChapStick Products are thus not "100% NATURAL," and labeling them as such is misleading and deceptive.

33.     The Products include, but are not limited to, the following:[6]

- ChapStick® total hydration 100% NATURAL – Fresh Citrus
- ChapStick® total hydration 100% NATURAL – Soothing Vanilla
- ChapStick® total hydration 100% NATURAL – Honey Blossom

34.     An example of the deceptive product packaging is reproduced below for illustrative purposes:

---

[4] http://www.aol.com/article/2016/01/22/onlyonaol-rachel-bilson-reveals-her-best-kiss-ever/21301281/ (last visited August 26, 2016).

[5] http://dailymakeover.com/rachel-bilson-beauty-must-haves/ (last visited August 26, 2016).

[6] Pfizer has discontinued offering some of the Mislabeled ChapStick Products, has altered the packaging, has altered the ingredients, or has selectively marketed the Products. Pfizer also regularly introduces new products that are also falsely labeled as "100% NATURAL," "100% NATURALS," or "NATURAL." The identity of these additional products will be ascertained through discovery, and these products are hereby included in the list of "the Mislabeled ChapStick Products" at issue in this action.



35.    Defendant also makes the "100% Natural" and "Clinically Proven" claims in television commercials for the Products. Screenshots from Defendant's television commercials are reproduced below for illustrative purposes:







(Available at http://www.ispot.tv/ad/ALFi/chapstick-total-hydration-put-your-lips-first (last visited August 26, 2016).)

36. Similarly, Defendant states on its interactive website,[7] accessible nationwide, that the "New ChapStick® Total Hydration 100% Natural is an age defying formula with Argan oil that is clinically proven to provide healthier and more youthful looking lips." The website also couples Defendant's "100% Natural" claims with representations that the Products will provide

---

[7] http://www.chapstick.com/products/total-hydration-100-natural (last visited August 26, 2016).

"age defying" benefits.[8] An example of Defendant's website representations is reproduced below for illustrative purposes:



37.     These Products all contain artificial ingredients including, but not limited to, the following:

(a)     ***Tocopheryl acetate***, a synthetic, highly processed form of Vitamin E manufactured using acetic acid. It is the ester of acetic acid and ***tocopherol***.

(b)     ***Tocopherols***, which federal regulations classify as synthetic substances, even when extracted from natural oils, which is done through molecular distillation, solvent extraction, or absorption chromatography.

(c)     ***Octyldodecanol*** (2-octyl dodecanol), a long-chain synthetic alcohol chemically produced from natural fats and oils by reducing the fatty acid grouping to the hydroxyl function.

(d)     ***Hydrogenated soybean oil and partially hydrogenated soybean oil***, highly-processed forms of soybean oil that have been chemically

---

[8] S. Jay Olshansky, a professor at the University of Illinois-Chicago's School of Public Health who has written extensively about aging, has warned, "If someone is promising you today that you can slow, stop or reverse aging, they're likely trying hard to separate you from your money." *See* Crary, D., "Boomers Will Be Spending Billions to Counter Aging," *USA Today* (October 22, 2011), available at http://usatoday30.usatoday.com/news/health/story/health/story/2011/08/Anti-aging-industry-grows-with-boomer-demand/50087672/1 (last visited August 26, 2016).

manufactured through a process called hydrogenation to convert polyunsaturated fatty acids to monounsaturated and saturated fatty acids, resulting in the artificial variety of *trans* fat.[9]

(e)    ***Caprylic/capric triglyceride***, an artificial compound manufactured by hydrolyzing coconut oil, removing the free glycerine, and separating the medium chain length (MCL) fatty acids by fractional distillation. The acids are then blended in the proper ratio and re-esterified with glycerine. Caprylic/capric triglyceride is classified as a skin and eye irritant and is also inherently toxic to aquatic life.

(f)    ***Glyceryl stearate***, a synthetic emollient made by reacting glycerine with stearic acid.

38.    Pfizer has concealed the nature, identity, source, and/or method of preparation of additional ingredients, which may also be artificial. For example, the Products contain an ingredient simply identified as "Flavor." Pfizer does not disclose the identity, source, or manner of processing this "Flavor." Thus, other ingredients may also be synthetic, and discovery of the production methods used for Pfizer Products is necessary.

### PFIZER FALSELY REPRESENTS THAT THE PRODUCTS ARE "CLINICALLY PROVEN"

39.    In addition to the "100% NATURAL" representations, Defendant uses labeling and advertising representations that mislead consumers to believe the Products have been shown through competent, reliable and scientifically valid clinical testing to provide healthier-looking lips, when, in fact, the Products have not.

---

[9] The U.S. Food and Drug Administration ("FDA") recently determined that partially hydrogenated oils, the primary dietary source of artificial *trans* fat in processed foods, are not "generally recognized as safe" or GRAS for use in human food. *See, e.g.*, "Talking about *Trans* Fat: What You Need to Know," available at http://www.fda.gov/Food/IngredientsPackagingLabeling/LabelingNutrition/ucm079609.htm (last viewed February 16, 2016).

40.     Defendant's representations that the Products are "Clinically Proven" to provide "healthier looking lips," or "healthier and more youthful looking lips," are false and misleading. The Products have not been clinically tested and there are no competent and reliable scientific studies showing that the Mislabeled ChapStick Products are clinically proven to provide any of the advertised benefits. A reasonable consumer believes that products labeled "Clinically Proven" have undergone competent and reliable scientific clinical testing and have been shown through such clinical testing to provide the advertised benefits. Because the Products have not gone through such testing, the "Clinically Proven" claim is likely to mislead the reasonable consumer.

41.     Indeed, on its corporate website,[10] Pfizer touts the importance and veracity of its clinical trials. For example, Defendant states "Pfizer publicly shares results from our clinical trials, whether the results are neutral, negative, or positive. We also share data gathered in clinical trials we sponsor with trial volunteers, researchers, and others."

42.     Pfizer also states that "[a]t the outset of clinical trials, we register those studies on clinicaltrials.gov, the U.S. National Institutes of Health's public clinical trials registry and database. After the completion of those studies, we provide results on clinicaltrials.gov."[11]

43.     Pfizer does not merely make unsubstantiated claims that the Products provide healthier-looking lips. Pfizer goes further and states that the alleged benefits have been "Clinically Proven," which is an affirmative statement that identifiable competent and reliable sources substantiate Pfizer's claims of benefits.

44.     Contrary to Pfizer's representations, however, a search of the clinicaltrials.gov

---

[10] http://www.pfizer.com/research/clinical_trials/trial_data_and_results (last visited August 26, 2016).

[11] *Id.*

registry and database reveals no tests performed on any ChapStick products. Nor does the clinicaltrials.gov website reveal *any* testing done by Pfizer concerning lips. On information and belief, there are no competent, reliable, or scientifically valid studies showing that the Mislabeled ChapStick Products are clinically proven to provide particular results.

## THE REPRESENTATIONS ARE FALSE, DECEPTIVE, AND MISLEADING

45.     Pfizer's conduct deceived and/or was likely to deceive reasonable consumers. Consumers were deceived into believing that the listed ingredients are not artificial and are "natural." In fact, the Mislabeled ChapStick Products contain unnatural, synthetic, highly or chemically processed ingredients.

46.     Indeed, the truthfulness of Pfizer's "100% NATURAL" representations fails the test of math. "100% Natural" means 0% unnatural, synthetic, highly processed, or chemically processed. Products with even one synthetic, highly processed, chemically processed, or otherwise unnatural ingredient, regardless of whether that ingredient originated within a natural source, are not 100% natural and cannot be labeled as such.

47.     Consumers would not know the true nature of the ingredients merely by reading the label of the Products. Discovery of the true nature of the ingredients requires knowledge of chemistry and federal regulations beyond that of the average reasonable consumer.

48.     Moreover, consumers were deceived into believing that the Products are "Clinically Proven." However, there are no studies showing that the Products are clinically proven to provide any of the advertised results.

49.     Unfortunately, consumers would not know the Mislabeled ChapStick Products are not clinically proven merely by reading the labels. Reasonable consumers cannot be expected to independently verify the existence of clinical testing at the point of sale.

## PFIZER'S DECEPTIVE AND MISLEADING OMISSIONS

50.     Pfizer deceptively and misleadingly conceals other material facts about the Mislabeled ChapStick Products, including:

     (a)    the true nature of the Products' ingredients;

     (b)    the identity, source, or nature of the ingredients identified as "flavor";

     (c)    that the Products contain artificial substances, synthetic substances, and/or substances that are synthetically manufactured, or are produced or processed using synthetic ingredients, artificial ingredients, toxins, carcinogens, pollutants, genetically modified organisms, and/or hazardous substances;

     (d)    that the Products are not "100% NATURAL";

     (e)    that the Products are not what a reasonable consumer would consider to be "100% NATURAL";

     (f)    that the Products do not contain ingredients claimed, or contain ingredients that are not disclosed; and

     (g)    that the Products are not "Clinically Proven."

51.     Pfizer conceals that certain synthetic ingredients are in its Products, concealing the true ingredients from a consumer purchasing the Products at a store or on Pfizer's www.ShopChapStick.com website.

52.     For example, a consumer purchasing the Products would be misled into believing that the Products are "100% Natural" and "Clinically Proven," when they are not.

53.     Plaintiffs and the members of the Class are not at fault for failing to discover Pfizer's misrepresentations earlier, and had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice.

54.     To this day, Pfizer continues to conceal and suppress the true nature, identity, source, and method of production of some of the ingredients in the Mislabeled ChapStick Products.

55.     The production process Pfizer uses for these ingredients is known only to it. Pfizer has not disclosed such information to Plaintiffs and the Class members. These facts are not ascertainable and are still not known to Plaintiffs, the Class members, and reasonable consumers. Pfizer's concealment tolls the applicable statute of limitations.

## PFIZER KNEW THE REPRESENTATIONS WERE FALSE

56.     Pfizer holds itself out to the public as a trusted expert in the consumer healthcare products arena. Pfizer claims to apply science and global resources in striving to set the standard for quality, safety, and value in the discovery, development, and manufacture of health-care products.

57.     Pfizer knew what representations it made regarding the Products. It also knew what ingredients were added to each Product.

58.     On February 22, 2016, Plaintiffs' counsel provided Pfizer with pre-suit notice of all the material allegations included in this Complaint. Pfizer was thus specifically notified that its Products labeled as "100% NATURAL" and "Clinically Proven" contained synthetic or unnatural ingredients and were not clinically proven.

59.     Pfizer thus knew all the facts demonstrating that the Products are neither "100% Natural" nor "Clinically Proven." Pfizer thus knew that the Products are falsely labeled.

## PFIZER INTENDED FOR CONSUMERS TO RELY
## ON ITS MISREPRESENTATIONS

60.     Pfizer made the false, deceptive, and misleading representations and omissions, intending for Plaintiffs and the Class members to rely upon these representations and omissions

in purchasing one or more of the Mislabeled ChapStick Products.

61.     In making the false, misleading, and deceptive representations and omissions at issue, Pfizer knew and intended that consumers would purchase the Mislabeled ChapStick Products when consumers would otherwise purchase a competing product or employ an alternate regimen.

62.     In making the false, misleading, and deceptive representations and omissions at issue, Pfizer also knew and intended that consumers would pay a premium for natural products, products that are free of artificial additives, and products that have been clinically proven, furthering Pfizer's private interest of increasing sales of its Products and decreasing the sales of natural products that are truthfully marketed by its competitors.

63.     Pfizer knows that consumers prefer natural and clinically proven products. Pfizer knows that consumers demand and will pay a premium for natural and clinically proven products.

**CONSUMERS REASONABLY RELIED
ON PFIZER'S MISREPRESENTATIONS**

64.     Consumers frequently rely on label representations and information in making purchasing decisions, especially in purchasing personal care products.

65.     When Plaintiffs and the Class members purchased the Mislabeled ChapStick Products, Plaintiffs and the Class members saw the false, misleading, and deceptive representations detailed above, and did not receive disclosure of the facts concealed, as detailed above.

66.     These misrepresentations were uniform and were communicated to Plaintiffs and every other member of the Class at every point of purchase and consumption.

67.     Plaintiffs and the Class members were among the intended recipients of Pfizer's

deceptive representations and omissions.

68. Plaintiffs and the Class members reasonably relied to their detriment on Pfizer's misleading representations and omissions.

69. Pfizer's false, misleading, and deceptive misrepresentations and omissions deceived and misled, and are likely to continue to deceive and mislead, Plaintiffs, the Class members, reasonable consumers, and the general public.

70. Pfizer's misleading affirmative statements further obscured what it failed to disclose. Thus, reliance upon Pfizer's misleading and deceptive representations and omissions may be presumed.

71. Pfizer made the deceptive representations and omissions with the intent to induce Plaintiffs and the Class members to purchase the Mislabeled ChapStick Products. Plaintiffs' and the Class members' reliance upon such representations and omissions may be presumed.

72. Pfizer's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. Thus, Plaintiffs' and the Class members' reliance upon such representations and omissions may be presumed as a matter of law. The materiality of those representations and omissions also establishes causation between Pfizer's conduct and the injuries sustained by Plaintiffs and the Class members.

**PFIZER'S WRONGFUL CONDUCT CAUSED PLAINTIFF'S INJURY**

73. As an immediate, direct, and proximate result of Pfizer's false, misleading, and deceptive representations and omissions, Pfizer injured Plaintiffs and the Class members in that they:

(a)     paid a sum of money for a Product that was not as represented;

(b)    paid a premium price for a Product that was not as represented;

(c)    were deprived the benefit of the bargain because the Products they purchased were different from what Pfizer warranted;

(d)    were deprived the benefit of the bargain because the Products they purchased had less value than what was represented;

(e)    did not receive a Product that measured up to their expectations as created by Pfizer;

(f)    applied to their lips, or otherwise used, a substance that was other than what was represented;

(g)    applied to their lips, or otherwise used, a substance that Plaintiffs and the members of the Class did not expect or consent to;

(h)    applied to their lips, or otherwise used, a Product that was artificial, synthetic, or otherwise unnatural;

(i)    without their knowing consent, applied to their lips, or otherwise used, a substance that was of a lower quality than what Pfizer promised;

(j)    were denied the benefit of knowing what they applied to their lips, or otherwise used;

(k)    were denied the benefit of the beneficial properties of the natural products promised; and

(l)    were denied the benefit of products that have been clinically tested.

74.    Had Pfizer not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class members would not have been injured as listed above.

75.    Plaintiffs and the Class members all paid money for the promised benefits and natural properties of the Mislabeled ChapStick Products. However, Plaintiffs and the Class members did not obtain the full value of the advertised Products due to Pfizer's

misrepresentations and omissions.

76.     Plaintiffs and the Class members purchased, purchased more of, or paid more for, the Products than they would have had they known the truth about the Products. Accordingly, Plaintiffs and the Class members have suffered "injury in fact" and lost money or property as a result of Pfizer's wrongful conduct.

## PFIZER BENEFITTED FROM ITS MISLEADING AND DECEPTIVE REPRESENTATIONS AND OMISSIONS

77.     As the intended, direct, and proximate result of Pfizer's false, misleading, and deceptive representations and omissions, Pfizer has been unjustly enriched through more sales of the Mislabeled ChapStick Products and higher profits, at the expense of Plaintiffs and the Class members. As a direct and proximate result of its deception, Pfizer also unfairly obtained other benefits, including the higher value associated with a "natural" and "clinically proven" brand, redirecting sales to it and away from its competitors, and increased sales of its other products.

## CLASS ALLEGATIONS

78.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following nationwide class (the "Class"):

> All United States residents who purchased Pfizer's Mislabeled ChapStick Products within the United States during the applicable statute of limitations period until the date notice of class certification is provided to the Class. Excluded from the Class are any of Pfizer's officers, directors, or employees; officers, directors, or employees of any entity in which Pfizer currently has or has had a controlling interest; and Pfizer's legal representatives, heirs, successors, and assigns.

79.     Additionally, Plaintiff Robinson brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following sub-class (the "New York Sub-Class"):

> All persons who purchased Pfizer's Mislabeled ChapStick Products

within New York during the applicable statute of limitations period until the date notice of class certification is provided to the Class. Excluded from the New York Sub-Class are any of Pfizer's officers, directors, or employees; officers, directors, or employees of any entity in which Pfizer currently has or has had a controlling interest; and Pfizer's legal representatives, heirs, successors, and assigns.

80.     Additionally, Plaintiff Tyman brings this action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following sub-class (the "Florida Sub-Class"):

All persons who purchased Pfizer's Mislabeled ChapStick Products within Florida during the applicable statute of limitations period until the date notice of class certification is provided to the Class. Excluded from the Florida Sub-Class are any of Pfizer's officers, directors, or employees; officers, directors, or employees of any entity in which Pfizer currently has or has had a controlling interest; and Pfizer's legal representatives, heirs, successors, and assigns.

81.     At this time, Plaintiffs do not know the exact number of members of the Class, the New York Sub-Class, or the Florida Sub-Class; however, given the nature of the claims and the sales of Pfizer's the Mislabeled ChapStick Products, Plaintiffs believe that the Class and Sub-Class members are so numerous that joinder of all members is impracticable.

82.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the Class and Sub-Class members include:

(a)     whether Pfizer misrepresented and/or failed to disclose material facts concerning the Mislabeled ChapStick Products;

(b)     whether Pfizer's conduct was unfair and/or deceptive;

(c)     whether Pfizer has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Pfizer to retain the benefits conferred upon Pfizer by Plaintiffs and the Class and Sub-Class members; and

(d)     whether Plaintiffs and the Class and Sub-Class members have sustained

injury with respect to the common law claims asserted, and if so, the proper measure of their damages.

83. With respect to the New York Sub-Class, additional questions of law and fact common to the members that predominate over questions that may affect individual members include:

(a) whether, in violation of New York GBL sections 349 and 350, Pfizer engaged in false and misleading marketing; and

(b) whether Pfizer, through deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Mislabeled ChapStick Products, was enriched at the expense of Plaintiff Robinson and the other members of the New York Sub-Class through the payment of the purchase price for the Products, or through payment of a premium for the Products.

84. With respect to the Florida Sub-Class, additional questions of law and fact common to the members that predominate over questions that may affect individual members include:

(c) whether, in violation of Florida's Deceptive And Unfair Trade Practices Act, Pfizer engaged in false and misleading marketing; and

(d) whether Pfizer, through deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Mislabeled ChapStick Products, was enriched at the expense of Plaintiff Tyman and the other members of the Florida Sub-Class through the payment of the purchase price for the Products, or through payment of a premium for the Products.

85. Plaintiffs' claims are typical of those of the Class and Sub-Classes, because Plaintiffs, like all members of the Class and Sub-Classes, purchased the Products at a premium price in a typical consumer setting, relying on Pfizer's false and misleading "100% NATURAL"

and "Clinically Proven" representations appearing on the Product labels, and Plaintiffs sustained damages from Pfizer's wrongful conduct.

86.    Plaintiffs will fairly and adequately protect the interests of the Class and the Sub-Classes because Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the Class and the Sub-Classes they seek to represent. Plaintiffs feel that they have been deceived, wish to obtain redress of the wrong, and wish to stop Pfizer from perpetrating similar wrongs on others. In addition, Plaintiffs are adequate representatives of the Class and the Sub-Classes because their interests do not conflict with the interests of the Class and Sub-Class members they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation, who led the investigation uncovering Pfizer's wrongs, who were the first to publicly uncover Pfizer's wrongs, who have no interests adverse to those of the Class and Sub-Class members, and who can and will vigorously prosecute this litigation.

87.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Specifically, no member of the Class or Sub-Classes has a substantial interest in individually controlling the prosecution of a separate action. The damages suffered by each individual Class and Sub-Class member likely will be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Pfizer's conduct. Thus, it would be virtually impossible for the Class and Sub-Class members individually to effectively redress the wrongs done to them.

88.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met as Pfizer has acted or refused to act on grounds generally applicable to the Class and Sub-Classes, thereby making appropriate final

injunctive or equitable relief with respect to the Class and Sub-Classes as a whole.

89. The prosecution of separate actions by members of the Class and Sub-Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Pfizer. For example, one court might enjoin Pfizer from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class and the Sub-Classes even where certain Class or Sub-Class members are not parties to such actions.

90. Pfizer's conduct is generally applicable to the Class and Sub-Classes as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class and Sub-Classes as a whole. As such, Pfizer's systematic policies and practices make declaratory relief with respect to the Class and Sub-Classes as a whole appropriate.

91. The damages suffered by each individual Class and Sub-Class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Pfizer's conduct. Thus, it would be virtually impossible for the Class and Sub-Class members individually to effectively redress the wrongs done to them.

## CAUSES OF ACTION

### COUNT I

**(Violation of New York General Business Law Section 349)**
**(On Behalf of the New York Sub-Class)**

92. Plaintiff Robinson repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

93. Plaintiff Robinson brings this claim on behalf of himself and on behalf of the other members of the New York Sub-Class, pursuant to New York GBL § 349.

94. GBL § 349 prohibits "deceptive acts or practices in the conduct of any business,

trade or commerce or in the furnishing of any service in [New York]."

95.     Defendant Pfizer is headquartered in New York, and all of is deceptive acts or practices emanated from New York.

96.     As fully alleged above, by advertising, marketing, distributing, and/or selling to Plaintiff Robinson and the New York Sub-Class members the Products with claims that they were "100% Natural" and "clinically proven," Defendant engaged in, and continues to engage in, deceptive acts and practices, because the Products are in fact made from unnatural, synthetic, and highly processed ingredients, and have not been shown through clinical testing to provide the advertised benefits.

97.     Plaintiff Robinson and the New York Sub-Class members believed Defendant's representations that the Products they purchased were "100% Natural" and "clinically proven." Plaintiff Robinson and the New York Sub-Class members would not have purchased the Products, or would not have purchased the Products at a premium price, had they known the Products were not actually "100% Natural" or "clinically proven" because they contained synthetic and highly processed ingredients, and were not shown through clinical testing to provide the advertised benefits.

98.     Plaintiff Robinson and the New York Sub-Class members were injured in fact and lost money as a result of Defendant's conduct of improperly describing the Products as "100% Natural" and "clinically proven." Plaintiff Robinson and the New York Sub-Class members paid for "100% Natural" and "clinically proven" Products, but did not receive such Products.

99.     The Products Plaintiff Robinson and the New York Sub-Class members received were worth less than the Products for which they paid. Plaintiff Robinson and the New York Sub-Class members paid a premium price on account of Defendant's misrepresentations that the

Products were "100% Natural" and "clinically proven."

100.    By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of GBL § 349, and Defendant is liable to Plaintiff Robinson and the New York Sub-Class members for the actual damages that they have suffered as a result of Defendant's actions. The amount of such damages is to be determined at trial, but will not be less than fifty dollars per violation. N.Y. Gen. Bus. Law § 349(h).

101.    Plaintiff Robinson and the New York Sub-Class members seek to enjoin such unlawful and deceptive acts and practices described above. Each of the New York Sub-Class members will be irreparably harmed unless the Court enjoins Defendant's unlawful and deceptive actions, in that Defendant will continue to falsely and misleadingly advertise the Products as "100% Natural" and as "clinically proven," as detailed herein.

102.    Plaintiff Robinson and the New York Sub-Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief prohibiting Defendant from continuing to disseminate its false and misleading statements, and other relief allowable under GBL § 349.

## COUNT II

### (Violation of New York General Business Law Section 350)
### (On Behalf of the New York Sub-Class)

103.    Plaintiff Robinson repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

104.    Plaintiff Robinson brings this claim on behalf of himself and on behalf of the other members of the New York Sub-Class, pursuant to New York GBL § 350.

105.    GBL § 350 prohibits "false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

106.    Defendant Pfizer is headquartered in New York, and all of is false advertising emanated from New York.

107.    As fully alleged above, by advertising, marketing, distributing, and/or selling to Plaintiff Robinson and the New York Sub-Class members the Products with claims that they were "100% Natural" and "clinically proven," Defendant engaged in, and continues to engage in, false advertising, because the Products are in fact made from unnatural, synthetic, and highly processed ingredients, and have not been shown through clinical testing to provide the advertised benefits.

108.    Plaintiff Robinson and the New York Sub-Class members believed Defendant's representations that the Products they purchased were "100% Natural" and "clinically proven." Plaintiff Robinson and the New York Sub-Class members would not have purchased the Products, or would not have purchased the Products at a premium price, had they known the Products were not actually "100% Natural" or "clinically proven" because they contained synthetic and highly processed ingredients, and were not shown through clinical testing to provide the advertised benefits.

109.    Plaintiff Robinson and the New York Sub-Class members were injured in fact and lost money as a result of Defendant's conduct of improperly describing the Products as "100% Natural" and "clinically proven." Plaintiff Robinson and the New York Sub-Class members paid for "100% Natural" and "clinically proven" Products, but did not receive such Products.

110.    The Products Plaintiff Robinson and the New York Sub-Class members received were worth less than the Products for which they paid. Plaintiff Robinson and the New York Sub-Class members paid a premium price on account of Defendant's misrepresentations that the Products were "100% Natural" and "clinically proven."

111.    By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes false advertising in violation of GBL § 350, and Defendant is liable to Plaintiff Robinson and the New York Sub-Class members for the actual damages that they have suffered as a result of Defendant's actions. The amount of such damages is to be determined at trial, but will not be less than five hundred dollars per violation. N.Y. Gen. Bus. Law § 350(e).

112.    Plaintiff Robinson and the New York Sub-Class members seek to enjoin such unlawful and false advertising described above. Each of the New York Sub-Class members will be irreparably harmed unless the Court enjoins Defendant's unlawful, false advertising in that Defendant will continue to falsely and misleadingly advertise the Products as "100% Natural" and as "clinically proven," as detailed herein.

113.    Plaintiff Robinson and the New York Sub-Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief prohibiting Defendant from continuing to disseminate its false and misleading statements, and other relief allowable under GBL § 350.

## COUNT III

### (Violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*)

### (On Behalf of the Florida Sub-Class)

114.    Plaintiff Tyman repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

115.    This cause of action is brought pursuant to the FDUTPA, Sections 501.201 to 201.213, *Florida Statutes*. The express purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FDUTPA §

501.202(2).

116.    The sale of the Products at issue in this case constituted a "consumer transaction" within the scope of FDUTPA, Sections 501.201 to 201.213, *Florida Statutes*.

117.    Section 501.204(1), *Florida Statutes* declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

118.    Section 501.204(2), *Florida Statutes* states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act." Pfizer's unfair and deceptive practices are likely to mislead—and have misled—the consumer acting reasonably under the circumstances and, therefore, violate Section 500.04, *Florida Statutes* and 21 C.F.R. § 740.1.

119.    Pfizer has violated the FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers. Specifically, Pfizer has misrepresented the true nature, quality, and ingredients and testing of the Mislabeled ChapStick Products, thereby disseminating representations or omissions that are false, deceptive, and likely to mislead a reasonable consumer, such as Plaintiff Tyman and members of the Florida Sub-Class.

120.    Simply put, by representing the Products as "100% Natural" and "Clinically Proven," Pfizer misrepresented and/or omitted facts about the Products, which were and are material to Plaintiff's and Florida Sub-Class Members' decisions to purchase the Products.

121.    Pfizer's sale of the Products is an unfair method of competition, unconscionable act and practice, and an unfair and deceptive act and practice in the conduct of its business.

122.    As a result of Pfizer's deceptive and unfair acts, Plaintiff Tyman and Florida

Sub-Class members have been damaged in the amount of the aggregate retail sales of the Products throughout the Class Period.

123.    Pfizer's conduct offends established public policy, and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

124.    Pfizer should be ordered to cease and/or continue ceasing its deceptive and unfair advertising, and should be made to engage in a corrective advertising campaign.

**COUNT IV**

**(Breach of Express Warranty)**

**(On Behalf of the National Class)**

125.    Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

126.    Pfizer's representations that the Products are "100% NATURAL" and "Clinically Proven" constitute affirmations of fact.

127.    Pfizer's representations that the Products are "100% NATURAL" and "Clinically Proven" relate to the goods and became part of the basis of the bargain between Pfizer and purchasers of the Products.

128.    Plaintiffs and members of the Class purchased the Products believing them to conform to the express warranties.

129.    As set forth in the paragraphs above, Pfizer's statements concerning the Products are false.

130.    All conditions precedent to Pfizer's liability under the above-referenced contract have been performed by Plaintiffs and the other Class members.

131.    Pfizer's breached its express warranties about the Products because, as alleged above, the Products are neither "100% NATURAL" nor "Clinically Proven." Pfizer breached at

least the following state warranty laws:

    A.      Alaska Stat. section 45.02.313;

    B.      A.R.S. section 47-2313;

    C.      A.C.A. section 4-2-313;

    D.      Cal. Comm. Code section 2313;

    E.      Colo. Rev. Stat. section 4-2-313;

    F.      Conn. Gen. Stat. section 42a-2-313;

    G.      6 Del. C. section 2-313;

    H.      D.C. Code section 28:2-313;

    I.      O.C.G.A. section 11-2-313;

    J.      HRS section 490:2-313;

    K.      Idaho Code section 28-2-313;

    L.      810 ILCS 5/2-313;

    M.      Ind. Code section 26-1-2-313;

    N.      K.S.A. section 84-2-313;

    O.      KRS section 355.2-313;

    P.      11 M.R.S. section 2-313;

    Q.      Mass. Gen. Laws Ann. ch. 106 section 2-313;

    R.      Minn. Stat. section 336.2-313;

    S.      Miss. Code Ann. section 75-2-313;

    T.      R.S. Mo. Section 400.2-313;

    U.      Mont. Code Anno. Section 30-2-313;

    V.      Neb. Rev. Stat. section 2-313;

    W.      Nev. Rev. Stat. Ann. section 104.2313;

    X.      RSA 382-A:2-313;

    Y.      N.J. Stat. Ann. section 12A:2-313;

    Z.      N.M. Stat. Ann. section 55-2-313;

    AA.   N.Y. U.C.C. Law section 2-313;

AB. N.C. Gen. Stat. section 25-2-313;

AC. N.D. Cent. Code section 41-02-30;

AD. ORC Ann. section 1302.26;

AE. 12A Okl. St. section 2-313;

AF. Or. Rev. Stat. section 72-3130;

AG. 13 Pa.C.S. section 2313;

AH. R.I. Gen. Laws section 6A-2-313;

AI. S.C. Code Ann. section 36-2-313;

AJ. S.D. Codified Laws, section 57A-2-313;

AK. Tenn. Code Ann. section 47-2-313;

AL. Tex. Bus. & Com. Code section 2.313;

AM. Utah Code Ann. section 70A-2-313;

AN. 9A V.S.A. section 2-313;

AO. Va. Code Ann. section 59.1-504.2;

AP. Wash. Rev. Code Ann. section 62A.2-313;

AQ. W. Va. Code section 46-2-313;

AR. Wyo. Stat. section 34.1-2-313.

132.   As a result of Pfizer's breaches of express warranty, Plaintiffs and the other members of the Class were damaged in the amount of the purchase price they paid for the Products, or in the amount of the premium they paid, in amounts to be proven at trial.

133.   Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and the other members of the Class, placed Pfizer on notice thereof.

134.   As a proximate result of the breach of warranties by Pfizer, Plaintiffs and the other members of the Class did not receive goods as warranted. Plaintiffs and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial.

Among other things, Plaintiffs and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiffs and the Class members known the true facts, they either would not have purchased the Products, would have purchased fewer Products, or would not have been willing to pay the premium price Pfizer charged for the Products.

135.    Wherefore Plaintiffs, on behalf of the Class, pray for relief as set forth herein.

## COUNT V
### (Restitution Based on Quasi-Contract/Unjust Enrichment)
### (On Behalf of the National Class)

136.    Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

137.    Pfizer's representations that the Products are "100% NATURAL" and "Clinically Proven" constitute affirmations of fact.

138.    Pfizer's representations the Products are "100% NATURAL" and "Clinically Proven" are part of the basis of the bargain between Pfizer and purchasers of the Products.

139.    Pfizer made the above-referenced representations in order to induce Plaintiffs and the Class members to purchase, and to pay a premium price for, the Products, and Plaintiffs and the Class members relied on the representations in purchasing the Products.

140.    Pfizer's conduct in inducing Plaintiffs and the Class members to purchase, and to pay a premium price for, the Products by the above-referenced representations is unlawful because the representations about the Products are untrue. Pfizer took money from Plaintiffs and the Class members based on these misrepresentations, even though the Products do not conform to those representations.

141.    As a result of Pfizer's deceptive, fraudulent, and misleading labeling, advertising,

marketing, and sales of the Products, Pfizer was enriched at the expense of Plaintiffs and the other Class members through the payment of the purchase price, and payment of a premium price, for the Products, thereby creating a quasi-contractual obligation on Pfizer to restore those ill-gotten gains to Plaintiffs and the Class members.

142.   Under the circumstances, it would be against equity and good conscience to permit Pfizer to retain the ill-gotten benefits that it received from Plaintiffs and the other Class members, in light of the fact that the Products purchased by Plaintiffs and the other Class members were not what Pfizer purported them to be. Thus, it would be unjust or inequitable for Pfizer to retain the benefit without restitution to Plaintiffs and the other Class members for the monies paid to Pfizer for such Products.

143.   As a direct and proximate result of Pfizer's unjust enrichment, Plaintiffs and the Class members are entitled to restitution or restitutionary disgorgement, in an amount to be proven at trial.

144.   Wherefore Plaintiffs, on behalf of the Class, pray for relief as set forth herein.

**COUNT VI**

**(Negligent Misrepresentation)**

**(On Behalf of the National Class)**

145.   Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

146.   Throughout the Class Period, Pfizer made incorrect representations and/or omissions of fact regarding the Products.

147.   Pfizer advertised, labeled, packaged, marketed, distributed, and sold the Products as "100% NATURAL" and "Clinically Proven," when they are not.

148.   Pfizer was negligent in making the misrepresentations and/or omissions at issue

because it knew, or should have known, that the Products are not 100% Natural and Clinically Proven.

149.    Plaintiffs and members of the Class relied on Pfizer's misrepresentations and/or omissions in purchasing the Products, which they believed did not contain synthetic or unnatural ingredients, or anything other than "100% NATURAL" ingredients, and were "Clinically Proven."

150.    The factual misrepresentations and/or omissions committed by Pfizer were material to Plaintiffs and members of the Class in making their purchases of the Products.

151.    Plaintiffs and other members of the Class relied upon the incorrect representations and/or omissions made about the Products to their detriment, in that Plaintiffs and other members of the Putative Class paid the purchase price for the Products based upon the incorrect representations and/or omissions, and had Plaintiffs and other members of the Putative Class known the truth about the Products, they would not have purchased the Products, or would not have purchased as much of the Products, or would not have paid the premium price that Pfizer charged for the Products.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs, individually and on behalf of the Putative Class and Sub-Classes, pray for relief as follows:

A.    For an order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed the class representatives, and that Plaintiffs' counsel be appointed counsel for the Class and Sub-Classes;

B.    For an order declaring Defendant's conduct to be in violation of GBL §§ 349 and 350 and FDUTPA and enjoining Defendant from pursuing the unlawful acts and practices alleged

herein;

C.      For an order requiring Defendant to pay full restitution to Plaintiffs and all members of

the Putative Class and Sub-Classes;

D.      For an order requiring Defendant to disgorge all ill-gotten gains flowing from the conduct

alleged in this Complaint;

E.      For an award of actual damages in an amount to be determined at trial;

F.      For an order awarding reasonable attorneys' fees and the costs;

G.      For an award of pre- and post-judgment interest on any amounts awarded; and

H.      For such other and further relief as may be deemed just, necessary or proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated:  September 2, 2016                    Respectfully submitted,

By: _____

Kim E. Richman
krichman@richmanlawgroup.com
**THE RICHMAN LAW GROUP**
81 Prospect Street
Brooklyn, New York 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292

**EGGNATZ, LOPATIN &
PASCUCCI, LLP**
Joshua H. Eggnatz, Esq.
(*Pro Hac Vice to Be Filed*)
JEggnatz@ELPlawyers.com
Michael J. Pascucci, Esq.
(*Pro Hac Vice to Be Filed*)
MPascucci@ELPlawyers.com
5400 South University Drive, Suite 413
Davie, Florida 33328
Telephone: (954) 889-3359
Facsimile: (954) 889-5913

**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
Natalie Finkelman Bennett
nfinkelman@sfmslaw.com
James C. Shah
jshah@sfmslaw.com
35 East State Street
Media, Pennsylvania 19063
Telephone: (610) 891-9880
Facsimile: (866) 300-7367

**POMERANTZ LLP**
Jayne A. Goldstein
jagoldstein@pomlaw.com
1792 Bell Tower Lane, Suite 203
Weston, Florida 33326
Telephone: (954) 315-3454
Facsimile: (954) 315-3455

*Attorneys for Plaintiffs and the Proposed Class and Sub-Classes*