**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RACHEL TYMAN and JOHNATHAN ROBINSON, on behalf of themselves and all others similarly situated, | Civil Action No. 1:16-cv-06941-LTS |
| Plaintiff, | |
| v. | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| PFIZER, INC., | |
| Defendant. | |

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................ i

**TABLE OF AUTHORITIES** ....................................................................................... ii

**MEMORANDUM OF POINTS AND AUTHORITES** .......................................... 1

**I.    STATEMENT OF FACTS** ................................................................................ 1

**II.   LEGAL STANDARD – RULE 12(b)(6)** ......................................................... 4

**III.  ARGUMENT** ...................................................................................................... 4

    A.    Plaintiffs Sufficiently Plead Causation and Reliance ..................................... 4

    B.    Plaintiffs' Claims for Unjust Enrichment and Negligent Misrepresentation, and Plaintiff Tyman's Claim Under FDUTPA, Are Not Governed by Rule 9(b), But the Heightened Rule 9(b) Standard Is Satisfied Nonetheless. ...................................................................... 7

    C.    Plaintiff Robinson Sufficiently Pleads a Special Relationship to State a Claim for Negligent Misrepresentation. ................................................................................... 11

    D.    Plaintiff Tyman's Claim for Negligent Misrepresentation Is Not Barred Under Florida's Economic-Loss Doctrine. ........................................................................................ 13

    E.    Plaintiffs Adequately Allege That They Provided Defendant With Timely Notice of the Alleged Breach as Required by Claims for Breach of Express Warranty. .............................. 15

    F.    Plaintiffs and the Putative Class Properly Plead Unjust Enrichment ................................ 17

**IV.  CONCLUSION** ................................................................................................ 20

Plaintiffs' Response in Opposition to Defendant's Partial Motion to Dismiss

## TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co*., No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156
(E.D.N.Y. July 21, 2010) ........................................................................................ 8

*Amerol Corp. v. Am. Chemie-Pharma, Inc*., No. CV 04-0940 (JO), 2006 U.S. Dist. LEXIS 98037
(E.D.N.Y. Mar. 17, 2006) ...................................................................................... 16

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ......................................................................... 4, 6, 9

*Burns v. Winnebago Industries, Inc*., 2013 U.S. Dist. LEXIS 116377 (U.S. M.D. Fla. 2013) .... 14

*Circeo-Loudon v. Green Tree Servicing,* LLC, No. 14-CIV-21384-MORE, 2015 U.S. Dist.
LEXIS 54794 (S.D. Fla. Apr. 27, 2015) ..................................................................... 18

*Fenerjian v. Nongshim Co*., 72 F. Supp. 3d 1058 (N.D. Cal. 2014) ...................................... 19

*Ferring B.V. v. Allergan, Inc*., 932 F. Supp. 2d 493 (S.D.N.Y. 2013) ................................... 18

*Gale v. Int'l Bus. Machs. Corp*., 9 A.D.3d 446 (2d Dep't 2004) ............................................. 5

*Goldemberg v. Johnson & Johnson Consumer Cos*., 8 Supp. 3d 467 (S.D.N.Y. 2014) ............. 6, 8

*Hoth v. Gerber Prods. Co*., No. 15-CV-2995 (MKB), 2016 U.S. Dist. LEXIS 134019 (E.D.N.Y.
Sep. 28, 2016) ...................................................................................................... 10

*Hughes v. Ester C Co*., 930 F. Supp. 2d 439 (E.D.N.Y. 2013) ...................................... 12, 17

*In re Bayer Corp. Combination Aspirin*, 701 F. Supp. 2d 356, 384 (E.D.N.Y. 2010) ................. 17

*In re Frito-Lay N. Am., Inc.,* No. 12-MD-2413 (RRM)(RLM), 2013 U.S. Dist. LEXIS 123824
(E.D.N.Y. Aug. 29, 2013) ...................................................................................... 16

*In re Gotham Silver Co*., 91 F. Supp. 520 (S.D.N.Y. 1950) ................................................. 15

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.,* 955 F. Supp. 2d
1311 (S.D. Fla. 2013) ............................................................................................. 18

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig*., No. 08-939 (DRD), 2009 U.S. Dist.
LEXIS 82833 (D.N.J. Sept. 10, 2009) ......................................................................... 6

*Kimmell v. Schaefer*, 675 N.E.2d 450 (1996) ............................................................ 11, 12

*Landesbank Baden- Wurttemberg v. Goldman, Sachs & Co*., 821 F. Supp. 2d 616
(S.D.N.Y.2011) .................................................................................................... 11

*Lieberson v. Johnson & Johnson Consumer Cos*., 865 F. Supp. 2d 529 (D.N.J. 2011) ......... 6, 7, 9

*Maaloaf v. Salomon Smith Barney, Inc*., No. 02 Civ 4770(SAS), 2003 WL 1858153 (S.D.N.Y.
Apr. 10, 2003) ..................................................................................................... 18

*Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333 (S.D. Fla. 2014) .......................... 10

*Parker v. Am. Traffic Sols., Inc*., No. 14-CIV-24010-MORE, 2015 U.S. Dist. LEXIS 105522
(S.D. Fla. Aug. 10, 2015) ....................................................................................... 18

*PFM Air, Inc. v. Dr.Ing.hc.F.Porsche A.G*., No. 8:08-CV-392-T-17MAP, 2011 WL 254724
(M.D. Fla. Jan. 26, 2011) ....................................................................................... 13

*Quinn v. Walgreen Co*., 958 F. Supp. 2d 533 (S.D.N.Y. 2013) ........................................... 16

*Rapcinsky v. Skinnygirl Cocktails, L.L.C*., No. 11 Civ. 6546 (JPO), 2013 WL 93636, (S.D.N.Y.
Jan. 9, 2013) ......................................................................................................... 5

*Reilly v. Amy's Kitchen, Inc*., No. 13-21525-CIV-COHN/SELTZER, 2013 U.S. Dist. LEXIS
188683 (S.D. Fla. Dec. 9, 2013) ............................................................................... 10

*Romano v. Motorola*, Inc., No. 07-CV-60517, 2007 U.S. Dist. LEXIS 86472, 2007 WL 4199781
(S.D. Fla. Nov. 26, 2007) ....................................................................................... 19

*Seidman v. Snack Factory, LLC*, No. 14-62547-CIV-COHN/SELTZER, 2015 U.S. Dist. LEXIS
38475 (S.D. Fla. Mar. 26, 2015) .............................................................................. 10

*Silva v. Smucker Nat. Foods, Inc*., No. 14-CV-6154 (JG)(RML), 2015 U.S. Dist. LEXIS 122186

(E.D.N.Y. Sep. 14, 2015) .................................................................................................. 6
*Smith v. WM. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336 (S.D. Fla. 2009) ...................................... 10
*St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144 (E.D.N.Y. 2010) ............................................ 18
*State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*, 42 A.D.3d 301 (N.Y. App. Div. 2007) .......... 19
*Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 U.S. Dist. LEXIS 126880 (E.D.N.Y., Sept. 22, 2015) .................................................................................................................................. 19
*Tiara Condo. Ass'n v. Marsh & McLennan Cos.,* 110 So. 3d 399 (Fla. 2013) ...................... 13, 14
*Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251 (E.D.N.Y. 2014) ....................................... 16

## Statutes

FED. R. CIV. P. 8(a)(2) .................................................................................................................. 4
FED. R. CIV. P. 9(B) ..................................................................................................................... 10
Fla. Stat. §§ 501.201, *et seq.* ...................................................................................................... 2
N.Y. GEN. BUS. LAW § 349 ......................................................................................................... 2
N.Y. GEN. BUS. LAW § 350 ......................................................................................................... 2

## Other Authorities

2 Williston on Sales, 2d Ed., 1259 (1924) ................................................................................. 15
N.Y. U.C.C. 2-607 ................................................................................................................. 15, 16

Plaintiffs Rachel Tyman and Johnathan Robinson (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated ("Putative Class"), by and through their undersigned counsel, and pursuant to all applicable *Federal Rules of Civil Procedure*, hereby file this Response and Incorporated Supporting Memorandum of Points and Authorities in Opposition to the Partial Motion to Dismiss ("Motion") filed by Defendant, Pfizer, Inc. ("Defendant" or "Pfizer"), on November 18, 2016 [Dkt. No. 17]. Because Plaintiffs have sufficiently alleged facts that support the claims and ultimate relief sought, Plaintiffs respectfully request that this Honorable Court enter an Order denying Defendant's Motion in its entirety, and for all other relief deemed just, appropriate, or proper.

## MEMORANDUM OF POINTS AND AUTHORITES

### I.      STATEMENT OF FACTS

Plaintiffs allege that Defendant falsely represented that its "Total Hydration" ChapStick brand products (the "Mislabeled ChapStick Products" or the "Products") are "100% NATURAL," even though the Products contain unnatural ingredients that are synthetic and artificial, including tocopheryl acetate, tocopherols, octyldodecanol, hydrogenated soybean oil, partially hydrogenated soybean oil, caprylic/capric triglyceride, and glyceryl stearate. Complaint ("Compl.") [Dkt. No. 1] at ¶¶ 3, 6.[1] Further, Defendant labels the Products as

---

[1]      In fact, as described in the Complaint, the Products all contain artificial ingredients including, but not limited to, the following: (a) Tocopheryl acetate, a synthetic, highly processed form of Vitamin E manufactured using acetic acid; (b) Tocopherols, which federal regulations classify as synthetic substances, even when extracted from natural oils; (c) Octyldodecanol (2-octyl dodecanol), a long-chain synthetic alcohol chemically produced from natural fats and oils by reducing the fatty acid grouping to the hydroxyl function; (d) Hydrogenated soybean oil and partially hydrogenated soybean oil, which are highly processed forms of soybean oil that have been chemically manufactured through a process called hydrogenation to convert polyunsaturated fatty acids to monounsaturated and saturated fatty acids, resulting in the artificial variety of trans fat; (e) Caprylic/capric triglyceride, an artificial compound that is

"Clinically Proven" without competent, reliable, and scientifically valid clinical testing showing that the Products provide "healthier," "more youthful looking lips." Compl. ¶ 8. Defendant manufactured, marketed, advertised, distributed and sold the Products in retail stores and on Pfizer's www.ShopChapStick.com website throughout the nation and in this judicial district. Compl. ¶¶ 18, 51. Defendant's misrepresentations regarding the Products are false, deceptive, and likely to mislead reasonable consumers. Compl. ¶¶ 14-15. Plaintiffs plead the following causes of action: (1) violation of New York General Business Law (GBL) § 349; (2) violation of New York GBL § 350; (3) violations of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201, *et seq*.; (4) negligent misrepresentation; (5) restitution based on quasi-contract/unjust enrichment; and (6) negligent misrepresentation. Compl. ¶¶ 92-151.

Plaintiff Johnathan Robinson viewed the labels and advertising and purchased the Products labeled "100% NATURAL," including but not limited to the Total Hydration Fresh Citrus variety, in the State of New York during the Class Period. Compl. ¶ 19.[2] Plaintiff Rachel Tyman viewed the labels and advertising and purchased the Products labeled "100% NATURAL," including but not limited to the Total Hydration Fresh Citrus variety, in the State of Florida during the Class Period. Compl. ¶ 20. Plaintiffs saw and read the "100% NATURAL" and "Clinically Proven" labels, and relied upon those representations in making

---

classified as a skin- and eye-irritant and is also inherently toxic to aquatic life; and (f) Glyceryl stearate, a synthetic emollient made by reacting glycerine with stearic acid. Compl. at ¶ 37.

2      Plaintiffs bring this action on behalf of a nationwide class defined as "All United States residents who purchased Pfizer's Mislabeled ChapStick Products within the United States during the applicable statute of limitations period until the date notice of class certification is provided to the Class." Compl. ¶ 78. In addition, Plaintiff Robinson and Plaintiff Tyman respectively bring this action on behalf of sub-classes of all persons who purchased the Mislabeled ChapStick Products within New York (Compl. ¶ 79) and Florida (Compl. ¶ 80) during the applicable limitations period until the date notice of class certification is provided to the Class.

Plaintiffs' Response in Opposition to Defendant's Partial Motion to Dismiss

their purchases. Compl. ¶ 21. They reasonably believed that the Products labeled "100% NATURAL" were 100% natural, as labeled, and the "100% NATURAL" representation was a significant reason for their purchases. *Id*. Plaintiffs reasonably believed that the Products labeled "Clinically Proven" were proven through competent, reliable, and scientifically valid clinical testing to provide the advertised benefits, as labeled, and the "Clinically Proven" representation was a significant reason for their purchases. *Id*.

Plaintiffs and the Putative Class did not obtain the full value of the advertised Products they purchased, or purchased more of the Products or paid more for the Products than they would have had the Products been accurately labeled. Compl. ¶¶ 13, 76. Consequently, Plaintiffs and the Putative Class lost money as a result of Defendant's wrongful conduct. Compl. ¶ 77. The misrepresentations were uniform and were communicated to Plaintiffs and every other member of the Putative Class at every point of purchase, regardless of whether purchased online or in a brick-and-mortar store. Compl. ¶ 66. Defendant holds itself out to the public as a trusted expert and industry leader in the consumer healthcare products arena. Compl. ¶ 56.[3] Defendant was aware of the representations it made regarding the Products. Compl. ¶ 62. Defendant also knew what ingredients were added to each of the Products. Compl ¶ 57. On February 22, 2016, Plaintiffs' counsel provided Defendant with pre-suit notice of all the material allegations included in the Complaint; specifically, that its Products labeled as "100% NATURAL" and "Clinically Proven" contained synthetic or unnatural ingredients and were not clinically proven. Compl. ¶ 58.

---

3.        For example, Defendant states on its website that it is "committed to applying science and our global resources to improve health and well-being at every stage of life." Compl. at ¶ 27.

Plaintiffs' Response in Opposition to Defendant's Partial Motion to Dismiss

## II.        LEGAL STANDARD – RULE 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the causes of action asserted in a complaint. *See, e.g.*, *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). "[A] pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief." *Id.* at 677-678.  (citing FED. R. CIV. P. 8(a)(2)). The complaint need allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard here, there is no basis to dismiss Plaintiffs' claims.

## III.        ARGUMENT

Dismissal is not warranted here, as Plaintiffs sufficiently alleged facts in the Complaint that support the claims and relief sought. First, Plaintiffs adequately plead causation and reliance. Second, Plaintiffs' claims for unjust enrichment and negligent misrepresentation, as well Plaintiff Tyman's FDUTPA claim, all adequately plead injury under Rule 9(b). As to the negligent misrepresentation claims, Plaintiff Robinson sufficiently pleads a special relationship to state a claim for negligent misrepresentation, and Plaintiff Tyman's claim for negligent misrepresentation is not barred under Florida's economic-loss doctrine. Next, Plaintiffs adequately allege that they provided Defendant with timely notice of the alleged breach. Finally, Plaintiffs and the Putative Class properly plead claims for unjust enrichment.

### A.        Plaintiffs Sufficiently Plead Causation and Reliance.

Defendant argues that the connection between Defendant's false labeling and advertising and Plaintiffs' decisions to purchase the Products is too attenuated to plead causation sufficiently. Motion at 6-8. Contrary to Defendant's assertions, the connection is not attenuated

Plaintiffs' Response in Opposition to Defendant's Partial Motion to Dismiss

at all. Indeed, Defendant seeks to impose a heightened pleading standard that is not related to the plausible pleading requirements of Plaintiffs' claims. To properly allege causation, plaintiffs must state in the complaint that they saw the misleading statements of which they complain before they came into possession of the products purchased. *See Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, No. 11 Civ. 6546 (JPO), 2013 WL 93636, at *6 n.3 (S.D.N.Y. Jan. 9, 2013) (quoting *Gale v. Int'l Bus. Machs. Corp.*, 9 A.D.3d 446, 447 (2d Dep't 2004)).

First, Defendant challenges the allegations of causation only as to the statements on Defendant's website and non-label advertising — it does not dispute that Plaintiffs have pleaded they saw the Products' labels prior to purchasing the Products. Motion at 4-5. Accordingly, causation in connection with Plaintiffs' label-based claims is not at issue, and to the extent Defendant's Motion seeks dismissal of Plaintiffs' label-based claims, the Motion should be denied.

Second, the misrepresentations on Defendant's website and other non-label advertising contained in the Complaint are pleaded to provide context to the misrepresentations contained on the Products' labels. They are appropriately pleaded facts upon which this Court can rely in determining that Defendant's advertising campaign for the Products is materially misleading to a reasonable consumer.

Third, Plaintiffs plead that they and the Class "viewed the labels and ***advertising*** and purchased the Mislabeled ChapStick Products labeled as '100% NATURAL' [and 'Clinically Proven']." Compl. ¶¶ 19-20 (emphasis added). Courts in the Second Circuit, as well as this District, have found allegations similar to Plaintiffs' sufficient to meet the pleading standards for causation and reliance. For example, in *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, the court denied the defendant's motion to dismiss as to non-label advertisements when the

Plaintiffs' Response in Opposition to Defendant's Partial Motion to Dismiss

plaintiff sufficiently alleged that "'Defendant's false, misleading, and deceptive misrepresentations and omissions, as described herein . . . have already deceived and misled Plaintiff . . . .'" 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014). The court reasoned that the "reasonable inference to be drawn from these allegations […] is that Plaintiff saw the Aveeno website and Facebook page described previously in the Complaint, and was thus deceived into purchasing the products in question. Accordingly, causation is sufficiently pled." *Id*. (citing *Iqbal*, 556 U.S. at 678).

Likewise, in *Silva v. Smucker Natural Foods, Inc.*, the court denied the defendant's motion to dismiss as to non-label advertisements when the plaintiff sufficiently alleged in his complaint that "'Plaintiff purchased the product in New York and paid a premium for the product because he saw and relied upon the product labeling, ***product advertising***, and read the packaging [. . . .] These representations were material to Plaintiff's decision to make the purchase and buy the product at a premium.'" No. 14-CV-6154 (JG)(RML), 2015 WL 5360022, at *9 (E.D.N.Y. Sep. 14, 2015) (emphasis added). Plaintiffs' allegations are essentially the same as those that have been upheld in the Second Circuit. *See* Compl. ¶¶ 19-20.

Defendant predominantly relies on nonbinding case law in New Jersey to support its attempt to impose improper and onerous pleading requirements. Motion at 6-7 (citing *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 533, 539 (D.N.J. 2011); *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, No. 08-939 (DRD), 2009 U.S. Dist. LEXIS 82833, at *39-40 (D.N.J. Sept. 11, 2009)). To the extent the Court considers such nonbinding case law, Defendant's principal reliance on the *Lieberson* case as exemplary legal rationale is misplaced. In *Lieberson*, the New Jersey District Court held for the onerous proposition that the plaintiff had to allege "whether or when the advertisements quoted in the

Plaintiffs' Response in Opposition to Defendant's Partial Motion to Dismiss

Complaint appeared in these magazines, [and] whether or when she viewed these advertisements in the various parenting magazines." 865 F. Supp. 2d at 539. *Lieberson* is an outlier that other courts in the same district have not followed. For example, in *Lynch v. Tropicana Products, Inc.*, Civil Action No. 2:11-cv-07382, 2013 WL 2645050, at *7 (D.N.J. June 12, 2013), the court denied the defendant's motion to dismiss as to the non-label advertisement-based claims and found that "it would have no significant impact on [Defendant's] ability to respond to the allegations" in the Complaint. The *Lynch* plaintiffs "sufficiently allege[d] when they viewed Tropicana's advertisements, that those advertisements were misrepresentations which incited them to purchase Tropicana's orange juice, and the frequency with which they purchased the NFC juice." *Id.*

Plaintiffs here go above and beyond the pleading requirements in the Second Circuit when they plead that the "misrepresentations were uniform and were communicated to Plaintiffs and every other member of the Class at every point of purchase and consumption." Compl. ¶ 66. That is sufficient to plead causation and reliance.

> **B.    Plaintiffs' Claims for Unjust Enrichment and Negligent Misrepresentation, and Plaintiff Tyman's Claim Under FDUTPA, Are Not Governed by Rule 9(b), But the Heightened Rule 9(b) Standard Is Satisfied Nonetheless.**

As an initial matter, the heightened 9(b) pleading standard does not apply to Plaintiff's consumer claims. *See In re Horizon Organic Milk Prods. Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F.Supp.2d 1311, 1323 n.8 (S.D. Fla. 2013); *see also, e.g., Galstaldi v. Sunvest Cmty. USA, LLC*, 637 F.Supp.2d 1045, 1058 (S.D. Fla. 2009) (stating that "[t]he requirements of Rule 9(b) do not apply to claims under the FDUTPA" because "FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts such as fraud, and therefore, the plaintiff need not prove the elements of fraud to sustain an action

under the statute" (citation and internal quotation marks omitted)). Nonetheless, Plaintiff has satisfied the heightened 9(b) pleading standard.

First, the calculation of the exact price premium will be established through discovery and expert testimony, and is not required to be pleaded in a Complaint. For pleading purposes, allegations nearly identical to those in the Complaint regularly survive a motion to dismiss. For example, in *Ackerman v. Coca-Cola Co.*, No. CV-09-0395, 2010 WL 2925955, at \*26 (E.D.N.Y. July 21, 2010), the court denied a motion to dismiss negligent misrepresentation and unjust enrichment claims as to an alleged price premium and held this allegation sufficient: "[P]laintiff Batsheva Ackerman purchased vitaminwater's 'revive' and 'multi-v' flavors at their premium price approximately one to two times per week between October 2007 and October 2008 from various drug stores such as Duane Reade located in New York." *Id.*.The court wrote, "When considered alongside the allegations already discussed, this suffices to plead plaintiffs [sic] New York claims with particularity." *Id.* In *Jernow v. Wendy's International, Inc.*, No. 07 Civ. 3971(LTS)(THK), 2007 WL 4116241, at \*4 (S.D.N.Y. Nov. 15, 2007), the court found the plaintiff adequately pleaded a price premium theory under an unjust enrichment claim when the plaintiff pleaded that the defendant "was able to charge him a premium based on its representations regarding the trans fat content of its french fries." *Id.*, at \*3; *see also, e.g.*, *Goldemberg*, 8 F.Supp.3d at 482 ("[W]hile identifying the prices of competing products in the Complaint would strengthen Plaintiff's allegation of injury, … the failure to do so is not fatal to Plaintiff's claim") (internal citation omitted); *Lynch*, 2013 WL 2645050, at \*7 ("[Rule 9(b)'s] 'where' requirement may be satisfied by the misrepresentations allegedly contained on Tropicana's labels or packages; there need not be strict identification of one particular store location where it is alleged that the labeling and packaging in question was sold in thousands of

locations throughout the country.").

Consistent with this precedent, Plaintiffs adequately plead their price premium theory. *See, e.g.*, Compl. ¶ 13 ("By deceiving consumers about the nature, quality, and/or ingredients of the Mislabeled ChapStick Products as detailed herein, Pfizer was able to command a premium price for the Products. Reasonable consumers, including Plaintiffs, paid more for the Products than they would have paid if the Products had been accurately labeled, and/or paid more for the Products than they would have been willing to pay for competing products that were not mislabeled."). In addition, Plaintiffs have alleged that they and the Putative Class all paid money for the promised benefits and natural properties of the Products, *see id.*, but did not obtain the full value of the advertised Products, and that they purchased, purchased more of, or paid more for, the Products than they otherwise would have, *see id.* ¶ 76. They lost money as a result of Defendant's wrongful conduct. *See id.* ¶ 77. Plaintiffs do not, at the pleading stage, need to allege specific prices, nor that they would have paid less for specific comparable products—this is not the standard to plead price premium damages. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Iqbal*, 556 US. at 678.

Defendant again predominantly relies on nonbinding case law in New Jersey to support its attempted imposition of improper pleading requirements. Motion at 11 (citing *Lieberson*, 865 F. Supp. 2d at 533, 539). Nonetheless, Defendant's reliance on *Lieberson* is misplaced for the same reasons already stated. The more appropriate District of New Jersey case to follow is *Lynch*, which distinguishes *Lieberson* and more recently held that nearly identical allegations of a price premium stated a claim under New York law, and also satisfied the heightened pleading requirements of Rule 9(b) under New Jersey law. *See Lynch*, 2013 WL 2645050, at *7.

Plaintiffs' Response in Opposition to Defendant's Partial Motion to Dismiss

Specifically, the *Lynch* court found the plaintiffs' allegations adequate where the plaintiffs alleged that they "did not receive the product for which they bargained as a result of Tropicana's misrepresentations," as well as that "Tropicana extracts a premium price for the product in question, based on the fact that the product is represented as fresh-squeezed." *Id.* at *8. Notably, the court held, "The New Jersey Consumer Fraud Act [] does not require a plaintiff to prove actual out-of-pocket loss in order to successfully state a claim," and an "ascertainable loss may occur where a 'consumer received less than what [he] was promised,'" including, simply alleging the "payment of a price premium." *Id.* . (citations omitted).

Plaintiffs' claims under FDUTPA survive for the same reasons. *See, e.g.*, *Hoth v. Gerber Prods. Co*., No. 15-CV-2995, 2016 U.S. Dist. LEXIS 134019, at *79 (E.D.N.Y. Sep. 28, 2016) (denying motion to dismiss FDUTPA claim on the basis that plaintiffs did not have to plead price of comparable products); *see also Seidman v. Snack Factory, LLC*, No. 14-62547-CIV, 2015 U.S. Dist. LEXIS 38475, at *11 (S.D. Fla. Mar. 26, 2015) (denying motion to dismiss and finding that plaintiffs were not required to plead exact value of the defendant's products and comparable products); *Marty v. Anheuser-Busch Cos.*, 43 F. Supp. 3d 1333, 1346-48, 1359 (S.D. Fla. 2014) (denying motion to dismiss and finding that plaintiffs sufficiently pled damages where plaintiffs alleged that they paid premium for defendant's product but did not allege price paid or price of comparable products); *Reilly v. Amy's Kitchen, Inc*., No. 13-21525-CIV, 2013 U.S. Dist. LEXIS 188683, at *15 n.2 (S.D. Fla. Dec. 9, 2013) (denying motion to dismiss where plaintiffs did not plead price of defendant's product or of comparable products and noting that whether he plaintiff could "substantiate her allegations" regarding premium price was "factual issue more appropriate for resolution on a motion for summary judgment"); *Smith v. WM. Wrigley Jr. Co*., 663 F. Supp. 2d 1336, 1339-40 (S.D. Fla. 2009) (finding that plaintiffs sufficiently pleaded

Plaintiffs' Response in Opposition to Defendant's Partial Motion to Dismiss

damages where they alleged that defendant charged premium over comparable products but did not allege price paid for defendant's product or prices of comparable products). Accordingly, Plaintiffs' claims for unjust enrichment and negligent misrepresentation, as well as Plaintiff Tyman's claim under FDUTPA, all adequately plead injury.

### C.      Plaintiff Robinson Sufficiently Pleads a Special Relationship to State a Claim for Negligent Misrepresentation.

Defendant also contends that the claim for negligent misrepresentation under New York law should be dismissed based upon Plaintiff Robinson's purported failure to plead a "special relationship." Motion at 12-14. This argument wholly ignores that both the New York State Court of Appeals and the Second Circuit have stated that whether a special relationship exists is a factual inquiry, which is inappropriate for determination on a motion to dismiss. *See, e.g.*, *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103-04 (2d Cir. 2001) (vacating dismissal of negligent misrepresentation claim and finding allegations by investors in health care financing venture—that defendants held themselves out as possessing special knowledge about the venture and its principal, knew investors sought information about the principal, and supplied it for that purpose—were sufficient to establish special relationship between corporations with a financial stake in venture, the venture's securities broker, and the broker's employee); *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (1996) ("Whether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact.").

Generally, "[t]o state a claim for negligent misrepresentation in connection with a commercial transaction, a plaintiff must plead justifiable reliance." *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 623-24 (S.D.N.Y. 2011). A court assessing reliance under New York law must consider three factors: "'whether the person

making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose'." *Id*. at 624 (quoting *Kimmell*, 675 N.E.2d at 454). Here, Plaintiffs allege that "Pfizer holds itself out to the public as a trusted expert in the consumer healthcare products arena." Compl. ¶ 56. Defendant knew what representations it made regarding the Products. Compl. ¶ 62. It also knew what ingredients were added to each of the Products. Compl. ¶ 57. Plaintiffs plead sufficient facts from which the Court may infer a special relationship between the parties to this action.

In short, Plaintiffs have stated a plausible claim that Defendant understood that consumers would use the content of its labeling, packaging, and website—indeed, all forms of its marketing and branding—for the purpose of evaluating the Products in comparison to competing products. Moreover, Plaintiffs have plausibly alleged that Defendant knew it was targeting individuals who generally lacked the scientific background necessary to carefully assess and truly evaluate Defendant's claims. Compl. ¶ 9. For these reasons, Plaintiffs have pleaded sufficient facts from which a special relationship under New York law might be inferred, and the Court cannot conclude as a matter of law that the contested statements could not have been reasonably relied on by consumers. *See Hughes v. Ester C Co*., 930 F. Supp. 2d 439, 474-76 (E.D.N.Y. 2013) (finding Plaintiffs' allegations that defendants held themselves out as holding special expertise regarding the purported health benefits of the product in question, and that the product's labeling contained language suggesting medical or scientific backing for defendants' claims, were sufficient for the Court to infer a special relationship between the parties).

Accordingly, Plaintiff Robinson sufficiently pleads a special relationship to state a claim for negligent misrepresentation.

Plaintiffs' Response in Opposition to Defendant's Partial Motion to Dismiss

### D.   Plaintiff Tyman's Claim for Negligent Misrepresentation Is Not Barred Under Florida's Economic-Loss Doctrine.

Defendant's arguments under Florida law are similarly unavailing. Defendant fails to appreciate that the economic loss rule is limited to products liability tort actions, not the consumer protection and negligent misrepresentation actions at issue here. *See, e.g., Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 406 (Fla. 2013). Defendant's attempts to characterize this action as a product liability case are unavailing.

Under Florida law, the "economic loss" rule does not apply to misrepresentation-based where the plaintiff alleges that the plaintiff paid money he or she would not otherwise have paid, even if the same damages would arise from a breach of contract claim. To this end, courts applying Florida law have refused to bar misrepresentation-based claims, where the "economic loss" is the money paid for the product. For instance, in *PFM Air, Inc. v. Dr.Ing.hc.F.Porsche A.G.*, the plaintiffs had purchased Porsche airplanes, and had entered into a contract to convert the engines. No. 8:08-CV-392-T-17MAP, 2011 WL 254724, at *4 (M.D. Fla. Jan. 26, 2011). One of the plaintiffs alleged that "the converted airplane is slower than it was represented it would be." *Id*. Another plaintiff alleged that the "useful load of the aircraft was so reduced by the conversion that the aircraft does not have the same value." *Id*., at *3. The court rejected defendant's argument that the plaintiffs' claims should be dismissed for failure to satisfy the "economic loss" requirement, holding that the economic loss requirement did not bar such claims. *Id*., at *9 ("Plaintiffs' claims are grounded on misrepresentations made by Porsche concerning the engine conversion program independent from the Warranty and Customer Assurance Program and are, therefore, not barred by the economic loss rule").

Additionally, in *Tiara*, the Florida Supreme Court confirmed that there need not be a separate "economic loss" beyond the loss resulting from the breach of contract, such as where

Plaintiffs' Response in Opposition to Defendant's Partial Motion to Dismiss

there is negligent misrepresentation and where there are freestanding statutory causes of action. *See* 110 So. 3d at 406 (noting that "we . . . reaffirmed that in cases involving either privity of contract or products liability, the other exceptions to the economic loss rule that we have developed, such as for [. . .] negligent misrepresentation [. . .] or free-standing statutory causes of action still apply"). The Florida Supreme Court did not eliminate those exceptions in *Tiara. See In re MyFord Touch Consumer Litig.*, No. C-13-3072 EMC, 2014 WL 2451291, at *14 (N.D. Cal. May 30, 2014). Thus, Florida precedent clearly states that the economic loss doctrine does not apply to negligent misrepresentation causes of action, as is the case here.

The cases cited by Defendant do not support its argument. For example, in *Burns v. Winnebago Industries, Inc.*, the court did find that the plaintiff's fraudulent concealment claim was barred by the economic loss rule. The court did so, however, because it determined that plaintiff's case was actually a products liability case. The court did *not* rule that all claims sounding in fraud are necessarily barred by the rule. 2013 U.S. Dist. LEXIS 116377 * 8-9 (M.D. Fla. 2013). Also, the court recognized the negligent misrepresentation exception to the economic loss rule but simply held that, "under the facts alleged, the exception . . . do[es] not apply." *Id*. at *9. The specific facts of the case, however, are not clear from the order, and therefore the court's reason for finding that the negligent misrepresentation exception was not applicable cannot be determined. *See id*. Indeed, the only court to have carefully considered the line of cases Defendant cites actually held that *Tiara* did ***not*** eliminate the negligent misrepresentation exception to the economic loss rule. *See In re MyFord Touch Consumer Litig.*, 2014 WL 2451291, at *14 (evaluating *Burns* cases, and rejecting argument that *Tiara* eliminated exception for claims sounding in fraud).

Accordingly, Plaintiff Tyman's claim for negligent misrepresentation is not barred under

Florida's economic-loss doctrine.

> **E.    Plaintiffs Adequately Allege That They Provided Defendant With Timely Notice of the Alleged Breach as Required by Claims for Breach of Express Warranty.**

Plaintiffs provided more than sufficient pre-suit notice, and the parties engaged in pre-suit discussions over the course of several months. Plaintiffs clearly allege pre-suit notice within a reasonable time in the Complaint. Compl. ¶¶ 58, 133. Defendant half-heartedly argues that it was somehow not sufficiently placed on notice of the misleading statements regarding its own Products by stating that Plaintiffs do not specify "when" they purchased the Products and discovered the Products' misrepresentations. Defendant again seeks to impose requirements that do not exist at the pleading stage. Plaintiffs have satisfied their pre-suit notice requirements and clearly put Defendant on notice of its alleged breach so Defendant can cure said breach, which it has not.

To assert a breach of warranty claim under New York law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. U.C.C. 2-607(3)(a); *see also Hubbard v. General Motors Corp.*, No. 95 Civ. 4362, 1996 U.S. Dist. LEXIS 6974, at *4-5 (S.D.N.Y. May 22, 1996). The purpose of the notice requirement is "not to inform the seller of his own act, but to reveal to him that the buyer chooses to assert the act as a breach and seek a legal remedy," so that the seller need not bear the hardship of "allowing a buyer at any time within the period of the Statute of Limitations to assert that the goods are or were defective though no objection was made when they were received." *In re Gotham Silver Co.*, 91 F. Supp. 520, 523 (S.D.N.Y. 1950) (Rifkind, J.) (citing 2 Williston on Sales, 2d Ed., 1259 (1924)) (internal quotation marks omitted). "[T]he rule of requiring notice is designed to defeat commercial bad faith, not to deprive a good faith

consumer of his remedy." N.Y. U.C.C. § 2-607, cmt. 4. Furthermore, the "notice required to preserve [the] right to sue for damages need only 'alert [the prospective defendant] that the transaction [was] troublesome'." *Amerol Corp. v. American Chemie-Pharma, Inc*., No. CV 04-0940, 2006 U.S. Dist. LEXIS 98037, at *8 (E.D.N.Y. Mar. 17, 2006) (citations omitted). Moreover, what constitutes a "reasonable time" for taking an action "depends on the nature, purpose and circumstances of such action." N.Y. U.C.C. § 1-204(2). Notably, the "sufficiency and timeliness of the notice is generally a question for the jury." *Hubbard*, 1996 U.S. Dist. LEXIS 6974, at *4.

The cases cited by Defendant are inapposite. In those cases, unlike here, the plaintiffs did not plead that they provided notice at all, or the plaintiffs unreasonably delayed notice. Motion at 16 (citing *Tomasino v. Estee Lauder Cos*., 44 F. Supp. 3d 251, 260-62 (E.D.N.Y. 2014) (holding that two-to-three years plaintiff waited to provide notice to defendant "constituted an unreasonable delay"); *In re Frito-Lay N. Am., Inc*., No. 12-MD-2413 (RRM)(RLM), 2013 U.S. Dist. LEXIS 123824, at *86 (E.D.N.Y. Aug. 29, 2013) ("Plaintiffs fail to allege in the First Amended Complaint that they even provided sufficient notice to defendants of their express warranty claims"); *Quinn v. Walgreen Co*., 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) ("plaintiffs have failed to allege [that] they provided Walgreens with timely notice of the alleged breach of warranty")).

Defendant does not dispute that Plaintiffs pleaded notice in their Complaint. Further, Defendant does not argue that there was unreasonable delay in providing notice such that they did not have an opportunity to cure the breach of express warranty allegations. At best, Defendant suggests that there *might* have been an unreasonable delay but fails to explain how this would make any difference to the present action.

Accordingly, Plaintiffs adequately allege that they provided Defendant with timely notice of the alleged breach as required by claims for breach of express warranty.

### F.        Plaintiffs and the Putative Class Properly Plead Unjust Enrichment

To prevail on a claim for unjust enrichment in New York, a plaintiff need only plead that (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) the circumstances were such that equity and good conscience require the defendant to make restitution. *See Hughes*, 930 F. Supp. 2d at 471. The Complaint easily establishes these elements by alleging (1) that Defendant was enriched at the expense of Plaintiffs and other victims of Defendant's deception; (2) when Plaintiffs and the Putative Class purchased the Products; and (3) that Defendant profited by falsely promising the Products as "100% NATURAL," when they actually contained unnatural ingredients, thereby inducing Plaintiffs and others into purchasing at a premium the Products they otherwise would not have purchased or would have paid less for. (Compl. ¶¶ 19-20, 136-144). Thus, Plaintiffs have stated a claim for unjust enrichment.

As the court held in *In re Bayer Corp. Combination Aspirin*, sustaining a nearly identical claim for unjust enrichment:

> [P]laintiffs charge defendant with employing misleading statements about the virtues of the combination product to market them to consumers. Because of these misrepresentations, plaintiffs purchased the combination products and defendant retained those benefits. If the allegations in the Complaint are true, then defendant reaped a financial reward at plaintiffs' expense. This is sufficient to state a claim for unjust enrichment.

701 F. Supp. 2d 356, 384 (E.D.N.Y. 2010).

Defendant argues Plaintiffs' unjust enrichment claim is duplicative of the other legal claims alleged. Motion at 17. Plaintiffs, however, are entitled under Rule 8(d) to plead unjust enrichment as an alternative theory of liability. *See St. John's Univ. v. Bolton*, 757 F. Supp. 2d

144, 183-84 (E.D.N.Y. 2010); *see also Parker v. American Traffic Solutions, Inc*., No. 14-CIV-24010, 2015 WL 4755175, at \*4 (S.D. Fla. Aug. 10, 2015) ("The Plaintiffs' decision to plead unjust enrichment in the alternative to its other claims does not preclude them from proceeding on their unjust enrichment claim through the motions to dismiss phase") (citing *Circeo-Loudon v. Green Tree Servicing, LLC*, No. 14-CIV-21384, 2015 WL 1914798, at \*5 (S.D. Fla. Apr. 27, 2015)); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.,* 955 F. Supp. 2d at 1337 ("[T]o the extent that a plaintiff has adequate legal remedies under theories of liability other than a claim of breach of an express contract, those remedies do not bar an unjust enrichment claim."); *Maaloaf v. Salomon Smith Barney, Inc*., No. 02 Civ. 4770(SAS), 2003 WL 1858153, at \*7 (S.D.N.Y. Apr. 10, 2003).

Moreover, because Plaintiffs may pursue more than just price premium damages under their unjust enrichment claim, the claim cannot be viewed as duplicative. In addition, the statute of limitations period for an unjust enrichment claim is longer than some of Plaintiffs' other claims. *See, e.g.*, *Ferring B.V. v. Allergan, Inc*., 932 F. Supp. 2d 493, 513 (S.D.N.Y. 2013) ("The limitations period for unjust enrichment claims is six years"). Thus, if Defendant's conduct was and is indeed misleading and deceptive, the unjust enrichment claim is not duplicative, as it allows for alternative relief as compared to Plaintiffs' other claims.

Defendant next argues that Plaintiffs did not confer a direct benefit on Defendant since Plaintiffs purchased the Products from retailers, and therefore Plaintiffs' unjust enrichment claim must fail. Motion at 18-20. Again, Defendant's nebulous requirements are of no consequence.

For instance, in *Stoltz v. Fage Dairy Processing Industry, S.A*., the court upheld almost identical unjust enrichment claims as here, under Florida Law, where, "Plaintiffs allege[d] that Defendants' marketing and packaging of the Total 0% Products is deceptive and misleading as to

the health and nutritional benefits of the Total 0% Products, and that Plaintiffs paid a premium price for the Total 0% Products as a result of Defendants' misleading and deceptive conduct." No. 14–CV–3826 (MKB), 2015 WL 5579872, at *28 (E.D.N.Y. Sept. 22, 2015) (citation omitted); *see also Romano v. Motorola*, *Inc.*, No. 07-CV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) (denying motion to dismiss putative class action alleging deceptive conduct in designing and marketing defendant's cellular phones and finding allegations that plaintiffs conferred a ***direct benefit on defendant despite purchasing phones from third-party retailers***, that defendant marketed phones directly to consumers, and that defendant was directly benefitted by profits earned from sale of phones were sufficient to state a claim for unjust enrichment) (emphasis added)).

Notably, the authority Defendant relies upon applies almost exclusively in the anti-trust context. Motion at 19 (citing *State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*, 42 A.D.3d 301, 304 (N.Y. App. Div. 2007) (holding that relationship between indirect purchasers of food additives and manufacturers that allegedly conspired to ***fix price*** of additives was too attenuated for claim of unjust enrichment)); *Fenerjian v. Nongshim Co., Ltd.*, 72 F. Supp. 3d 1058, 1088-90 (N.D. Cal. 2014) (dismissing plaintiffs' claims for unjust enrichment because indirect purchasers of Korean manufacturers' ***price-fixed*** noodles—purchased through food retailers—were too attenuated)).

Conversely, here, Plaintiffs copiously plead Defendant marketed the Products directly to consumers and directly benefitted by profits earned from sale of the Products. *See, e.g.*, Compl. ¶¶ 3, 11, 27, 77, 141. Accordingly, Plaintiffs and the Putative Class properly plead unjust enrichment. Because Defendant makes direct representations to consumers in its marketing, labeling, and packaging material resulting in profit for Defendant, and even sells directly to

consumers via its website, Plaintiffs and the Class have sufficiently conferred a direct benefit on Defendant.

IV.      **CONCLUSION**

For the reasons discussed above, Plaintiffs respectfully request that this Honorable Court enter an Order denying Defendant's Motion in its entirety, and for all other relief deemed just, appropriate, or proper.

**Respectfully Submitted,**

Dated: January 10, 2017                By: _____/s/ *Kim E. Richman*_____
                                       Kim E. Richman, Esq.
                                       krichman@richmanlawgroup.com
                                       **THE RICHMAN LAW GROUP**
                                       81 Prospect Street
                                       Brooklyn, New York 11201
                                       Tel.: (212) 687-8291
                                       Fax: (212) 687-8292

                                       **EGGNATZ, LOPATIN & PASCUCCI, LLP**
                                       Joshua H. Eggnatz, Esq., (*Pro Hac Vice*)
                                       JEggnatz@ELPlawyers.com
                                       Michael J. Pascucci, Esq., (*Pro Hac Vice*)
                                       MPascucci@ELPlawyers.com
                                       5400 South University Drive, Suite 413
                                       Davie, Florida 33328
                                       Tel.: (954) 889-3359
                                       Fax: (954) 889-5913

                                       **SHEPHERD, FINKELMAN, MILLER
                                       & SHAH, LLP**
                                       Natalie Finkelman Bennett
                                       nfinkelman@sfmslaw.com
                                       James C. Shah
                                       jshah@sfmslaw.com
                                       35 East State Street
                                       Media, Pennsylvania 19063
                                       Tel.: (610) 891-9880
                                       Fax: (866) 300-7367

**SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP**
Jayne A. Goldstein
jgoldstein@sfmslaw.com
1625 N. Commerce Parkway Suite 320
Ft. Lauderdale, Florida 33326
Tel.: (954) 903-3170
Fax: (866) 300-7367

*Counsel for Plaintiffs, the Putative Class, and
Sub-Classes*

Plaintiffs' Response in Opposition to Defendant's Partial Motion to Dismiss

## CERTIFICATE OF SERVICE

The undersigned certifies that on <u>January 10, 2017</u>, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send copies to all counsel of record.

<u>*/s/ Kim E. Richman*</u>
Kim E. Richman

Plaintiffs' Response in Opposition to Defendant's Partial Motion to Dismiss