USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/27/17_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RACHEL TYMAN, et al.,

        Plaintiffs,

    -against-

PFIZER, INC.,

        Defendant.

16-CV-06941 (LTS) (BCM)

**REPORT AND RECOMENDATION TO THE HONORABLE LAURA TAYLOR SWAIN**

**BARBARA MOSES, United States Magistrate Judge.**

    Plaintiffs Rachel Tyman and Jonathan Robinson bring this putative class action against defendant Pfizer, Inc. (Pfizer), the maker of Chapstick brand lip balm products, alleging that Pfizer deceptively labels and markets certain of its "Total Hydration" ChapStick varieties (ChapStick Products or Products) as "100% NATURAL" and as "Clinically Proven" to provide "healthier," "more youthful looking lips"' Compl. (Dkt. No. 1) ¶ 3, when in fact the Products contain "synthetic" and "unnatural" ingredients and have not been subject to any "scientifically valid clinical testing" verifying the advertised effects on users' lips. *Id*. ¶¶ 4-11. According to plaintiffs, Pfizer knowingly and intentionally misrepresents the ingredients and benefits of the ChapStick Products – on their labels and in television and internet advertising – to induce consumers to buy the Products, at a premium price, instead of purchasing less costly alternatives. *Id.* ¶¶ 64-77.

    In Counts I and II of the Complaint, plaintiff Robinson, who resides in New York, asserts violations of the New York consumer protection statute, N.Y. Gen. Bus. Law (NYGBL) §§ 349 and 350, on behalf of himself and all other persons who purchased the Products in New York (the putative New York Sub-Class). Compl. ¶¶ 19, 79, 92-113. In Count III, plaintiff Tyman, who resides in Florida, asserts violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*. (FDUTPA), on behalf of herself and all other persons who purchased the

Products in Florida (the putative Florida Sub-Class). *Id.* ¶¶ 20, 80, 114-24. In Counts IV, V and VI, both plaintiffs assert claims for breach of express warranty, unjust enrichment, and negligent misrepresentation, in each case on behalf of "all United States residents who purchased Pfizer's Mislabeled Chapstick Products within the United States during the applicable statute of limitations period" (the putative Nationwide Class). *Id.* ¶¶ 78, 125-51.

Before me for report and recommendation are Pfizer's motions to dismiss certain of plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) (Dkt. No. 16), and to strike plaintiffs' nationwide class allegations pursuant to Fed. R. Civ. P. 12(f) and 23(d) (Dkt. No. 18). For the reasons that follow, I respectfully recommend that the motion to dismiss be GRANTED IN PART and that the following claims be DISMISSED:

    (1)      Both plaintiffs' negligent misrepresentation claims, with prejudice;

    (2)      Both plaintiffs' unjust enrichment claims, with prejudice;

    (3)      Both plaintiffs' breach of express warranty claims, without prejudice; and

    (4)      All of plaintiffs' remaining claims, to the extent they are based on non-label advertising, without prejudice.

Should Your Honor accept my recommendations, the claims remaining for further litigation will be Robinson's claims under NYGBL §§ 349 and 350, on behalf of a putative New York class, and Tyman's claims under the FDUTPA, on behalf of a putative Florida class, in each case limited to the allegedly misleading labels affixed to the Chapstick Products. Since these claims are alleged on behalf of the statewide classes only, I further recommend that the motion to strike be GRANTED, and that plaintiffs' nationwide class allegations be STRICKEN as "immaterial" to the surviving claims, without prejudice to repleading in the event that plaintiffs successfully amend to state a cognizable nationwide claim.

## BACKGROUND

Plaintiffs Robinson and Tyman are "individual consumer[s]" who "regularly purchased" the Chapstick Products in their home states of New York and Florida, respectively. Compl. ¶¶ 19, 20, 78.[1] Defendant Pfizer is a Delaware corporation, headquartered in New York, which sells the Products to "consumers and retailers in New York, Florida and other states." *Id.* ¶ 23; Ans. (Dkt. No. 20), ¶¶ 23, 24.[2]

## I. Factual Allegations

Plaintiffs allege that Pfizer misleads the public concerning the "ingredients and characteristics" of the ChapStick Products, both by misrepresenting the Products as "100% NATURAL" and "Clinically Proven" to "provide healthier and more youthful looking lips," and by omitting "material facts" about the "true nature" of the listed ingredients. Compl. ¶¶ 3, 4, 34-36, 50-53. Plaintiffs allege that Pfizer's misrepresentations about the Products are "uniform" and were "communicated to Plaintiffs and every other member of the Class at every point of purchase and consumption," *id.* ¶ 66, by means of the Products' labels and packaging, *id.* ¶ 30-34; defendant's television commercials, *id.* ¶ 35 (including statements by actress Rachel Bilson, the "face of ChapStick Total Hydration 100% Natural," *id.* ¶ 29); and the "interactive website" that defendant uses to further market the ChapStick Products (the Products Website). *Id.* ¶ 36 & n.7.[3]

---

[1] Plaintiffs allege that they purchased the Products during the "class period," meaning within the "applicable statute of limitations period." Compl. ¶¶ 19-20, 78. Plaintiffs do not otherwise specify when they made their purchases, nor when they discovered the alleged deception.

[2] The ChapStick Products at issue "include, but are not limited to" "ChapStick® total hydration 100% NATURAL – Fresh Citrus," "ChapStick® total hydration 100% NATURAL – Soothing Vanilla," and "ChapStick® total hydration 100% NATURAL – Honey Blossom." Compl. ¶ 33 & n.6. Photographs of these items appear in the Complaint at ¶¶ 34-36, showing the phrase "100% NATURAL" on the lip balm tube itself. The phrase "Clinically Proven" appears, if at all, on the product packaging and in defendant's television advertisements.

[3] As of the date of this Report and Recommendation, the Products Website lists the Products as "100% Natural*" and describes them as containing "an age defying formula with Argan oil that is

## A. Misstatements and Omissions

### 1. "100% NATURAL"

According to plaintiffs, the phrase "100% Natural" is at the "core" of Pfizer's marketing for the ChapStick Products. Compl. ¶ 29. The Product packages are "prominently label[ed]" as "100% NATURAL," *id.* ¶¶ 31, 34; the same claim appears in television commercials and on the Website, *id.* ¶¶ 35-36, and Pfizer has partnered with actress Rachel Bilson to promote the Products as "100 percent natural, which is really important being a new mom." *Id.* ¶ 29.

Plaintiffs assert that "100% Natural" is a "statement of fact," Compl. ¶ 30, which means "0% unnatural, synthetic, highly processed, or chemically processed." *Id.* ¶ 46. Accordingly, products "with even one synthetic, highly processed, or otherwise unnatural ingredient, regardless of whether that ingredient originated within a natural source, are not 100% natural and cannot be labeled as such." *Id.* The ChapStick Products are not "100% Natural," plaintiffs allege, because they "contain ingredients that are artificial, synthetic, or otherwise highly or chemically processed." *Id.* ¶¶ 30-32. Specifically, plaintiffs allege that the ChapStick Products contain six or seven "artificial ingredients," *see id.* ¶ 6 (listing seven ingredients); *id.* ¶ 37 (listing six ingredients), and also contain "an ingredient identified simply as 'Flavor,'" which indicates that Pfizer "conceal[s]" the "nature, identity, source, and/or method of preparation of additional ingredients, which may also be artificial." *Id.* ¶ 38. Accordingly, plaintiffs argue, "the truthfulness of Pfizer's '100% NATURAL' representations fails the test of math," because "[a]s a matter of math and common sense, a product cannot be 100% natural if it contains *any* amount of unnatural,

_____

clinically proven to provide healthier looking and more youthful looking lips." The asterisk points to a note at the bottom of the web page, reading, in a smaller typeface, "*100% Naturally Sourced Ingredients." *See* https://www.chapstick.com/products/total-hydration-100-natural (last visited Dec. 26, 2017).

4

highly or chemically processed, synthetic ingredients." *Id.* ¶¶ 7, 46 (emphasis in original).[4]

### 2. "Clinically Proven"

Plaintiffs assert that "[w]hen a product is labeled 'Clinically Proven' to provide certain benefits, reasonable consumers expect that competent, reliable, and scientifically valid clinical testing has been conducted which proves that the products do indeed provide those advertised benefits." Compl. ¶¶ 8, 40. Therefore, "[m]arketing a product as 'Clinically Proven' without such clinical proof is deceptive." *Id.* ¶ 8.

To support this interpretation of "clinically proven," plaintiffs point to Pfizer's corporate website (the Corporate Website), which allegedly "touts the importance and veracity of [Pfizer's] clinical trials," Compl. ¶ 41, states that Pfizer registers those clinical trials on clinicaltrials.gov, and represents that Pfizer "publicly shares" the results. *Id.* ¶¶ 41-42.[5] Plaintiffs do not allege that the Corporate Website contains any statement about the ChapStick Products at issue in this action, nor that the Products Website contains any statements – misleading or otherwise – about clinical trials or clinicaltrials.gov. Nonetheless, plaintiffs assert based on their "search of the clinicaltrials.gov registry and database," which revealed "no tests performed on any Chapstick

---

[4] "Math" and "common sense" are the only authorities plaintiffs provide in support of their definition of "100% Natural," even though that definition is the explicit focus of the Complaint. *See, e.g.*, Compl. ¶ 7 ("This case is not about whether the unnatural ingredients added to the Products are 'safe' as personal care product additives. This case is not about whether the ingredients in the Mislabeled ChapStick Products are 'naturally sourced' or 'naturally derived.' This case *is* about whether the Products are '100% NATURAL' as Pfizer has fraudulently claimed.") (emphasis in original).

[5] "ClinicalTrials.gov" is a "Web-based resource" maintained by the United States National Library of Medicine and the National Institutes of Health to provide the public with "easy access to information on publicly and privately supported clinical studies on a wide range of diseases and conditions." https://clinicaltrials.gov/ct2/about-site/background (last visited Dec. 26, 2017). It "contains information about medical studies in human volunteers." *Id.* "ClinicalTrials.gov does not contain information about all the clinical studies conducted in the United States because not all studies are required by law to be registered (for example, observational studies and trials that do not study a drug, biologic, or device)." *Id.*

product . . . nor *any* testing done by Pfizer concerning lips." *Id.* ¶ 44 (emphasis in original), that "there are no competent, reliable, or scientifically valid studies showing that [the ChapStick Products] are clinically proven to provide particular results." *Id.* Because the ChapStick Products "have not been clinically tested and there are no competent and reliable scientific studies showing that [they] are clinically proven to provide any of the advertised benefits," *id.* ¶ 40, plaintiffs argue that is "undeniably deceptive" for Pfizer to label the ChapStick Products as "clinically proven" to provide "healthier" and "more youthful looking lips." *Id.* ¶ 8; *see also id.* ¶¶ 40, 48, 52.

### 3. Omissions

Plaintiffs allege that Pfizer has "deceptively and misleadingly conceal[ed] other material facts" about the ChapStick Products. *See* Compl. ¶ 50. However, this portion of the Complaint merely repeats, in different language, plaintiffs' primary allegations. *See, e.g.*, *id.* ¶ 50(d) (Pfizer concealed the material fact that "the [Products] are not '100% NATURAL.'").

### B. Causation and Reliance

Both plaintiffs allege that they "saw and read the '100% NATURAL' and 'Clinically Proven' labels" on the ChapStick Products, "reasonably believed" that those terms carry the definitions attributed to them in the Complaint, and relied on those statements to make their purchase decisions. Compl. ¶ 21; *id.* ¶¶ 8, 11, 13, 64. "Had Plaintiffs known the representations were false, misleading, and deceptive, they would not have purchased, and would not have paid a premium for, the Products." *Id.* ¶ 21. *See also id.* ¶ 13 (plaintiffs "paid more for the Products than they would have paid if the Products had been accurately labeled").

Plaintiffs allege generally that, in addition to the labels on the ChapStick Products, they viewed "advertising." *See* Compl. ¶¶ 19, 20. However, they do not specify what kind of advertising they viewed, or when they viewed it. Plaintiffs do not allege that they viewed any of the television

commercials described in the Complaint, nor that they read or heard the statements allegedly made by Ms. Bilson to promote the ChapStick Products. *See id.* ¶ 29 n.4. Similarly, plaintiffs do not allege that they ever visited the Products Website or the Corporate Website, much less that they relied on anything contained therein.

Plaintiffs allege that, in making the "false, misleading and deceptive representations and omissions" described in the Complaint, Pfizer "knew and intended" that consumers who "would otherwise purchase a competing product or employ an alternate regimen" would instead purchase the ChapStick Products, and pay a "premium" for them, because "consumers prefer natural and clinically proven products." Compl. ¶¶ 60-63. "[R]eliance upon such representations and omissions may be presumed," plaintiffs assert, because "a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions." *Id.* ¶¶ 71-72. According to plaintiffs, "The materiality of those representations and omissions also establishes causation between Pfizer's conduct and the injuries sustained by Plaintiffs and the Class Members." *Id.* ¶ 72.

### C. Injury

Plaintiffs allege that they were injured in various ways as an "immediate, direct and proximate result of Pfizer's false, misleading, and deceptive representations and omissions." Compl. ¶ 73. Their primary claim is that they "lost money or property" because they "purchased, purchased more of, or paid more for" the ChapStick Products than they would have "had they known the truth." *Id.* ¶¶ 75-76. Plaintiffs thus assert a "price premium" theory of damages, *see also id.* ¶¶ 73(b), 83(b), 84(b), 97, 132, 139, 151, but do not allege the prices or the premiums they paid. Plaintiffs also allege that Pfizer was "unjustly `enriched" through "more sales" of the ChapStick Products, and "higher profits" from those sales, as well as "the higher value associated

with a 'natural' and 'clinically proven' brand," which plaintiffs allege "increased sales of [Pfizer's] other products." *Id.* ¶ 77. In addition, plaintiffs allege that they suffered unspecified injuries associated with "appl[ying] to their lips, or otherwise us[ing], a substance" that was "unnatural" and "of lower quality" than the product advertised, "without their knowing consent." *Id.* ¶ 73. However, plaintiffs do not allege that the Products were unsafe, *see id.* ¶ 7, or that they caused any physical or emotional harm to plaintiffs or other consumers. *Id.* Their Prayer for Relief seeks monetary damages, restitution, disgorgement, and declaratory and injunctive relief. *Id.* at 35-36.

## II. Procedural Background

### A. Pleadings and Motions

Plaintiffs filed their Complaint on September 2, 2016. On November 18, 2016, Pfizer filed its motion to dismiss, its motion to strike plaintiffs' nationwide class allegations, and its Answer as to the claims it has not moved to dismiss.[6]

#### 1. Motion to Dismiss

Pfizer moves to dismiss plaintiffs' breach of express warranty, unjust enrichment, negligent misrepresentation, and FDUTPA claims in their entireties. It also seeks dismissal of "all of plaintiffs' claims," however denominated, to the extent they are based on alleged misstatements in product advertising or the Products Website. First, Pfizer argues that the heightened pleading standard of Fed. R. Civ. P. 9(b) applies to plaintiffs' FDUTPA, negligent misrepresentation, and unjust enrichment claims, and that under that standard plaintiffs do not adequately allege injury for the purpose of any of those claims. *See* Def. 12(b)(6) Mem. at 9-12. Second, Pfizer argues that,

---

[6] The only claims Pfizer has not moved to dismiss are plaintiff Robinson's NYGBL §§ 349 and 350 claims, to the extent those claims are based on alleged misstatements on the ChapStick Products labels, as opposed to "product advertising or Pfizer's website." *See* Def. Mem. in Supp. of Partial Mtn. to Dismiss, dated Nov. 18, 2016 (Dkt. No. 17) (Def. 12(b)(6) Mem.), at 20.

under any pleading standard, plaintiffs' negligent misrepresentation, unjust enrichment, and breach of express warranty claims should be dismissed pursuant to Fed. R. Civ. P. 12(b). Third, Pfizer moves to dismiss "all of plaintiffs' claims to the extent they are based on alleged misstatements included in product advertising or on Pfizer's website," *id*. at 20, arguing that plaintiffs cannot proceed on any theory of liability "based on alleged misstatements in [product] advertising," as opposed to product labels, "because neither plaintiff alleges that he or she saw the [ads or website] much less that they affected his or her purchasing decision." *Id.* at 4-5, 8 n.2. Plaintiffs disagree as to every point. *See* Pl. Opp. to Partial Mtn. to Dismiss, dated Jan. 10, 2017 (Dkt. No. 29) (Pl. 12(b)(6) Opp. Mem.), at 6-19.

### 2. Motion to Strike

Pfizer also moves to strike plaintiffs' nationwide class allegations (to the extent the underlying claims are not dismissed) pursuant to Fed. R. Civ. P. 12(f) and 23(d)(1)(D). Pfizer asserts that under New York's choice-of-law rules, "each proposed class member's claims are governed by the law of his or her home state." Def. Mem. in Supp. of Mtn. to Strike, dated Nov. 18, 2016 (Dkt. No. 19) (Def. Strike Mem.), at 5. Because "the relevant laws vary substantially from state to state," and because the National Class would include members from all 50 states (and the District of Columbia), Pfizer argues that it would be "impossible to determine in a single proceeding whether Pfizer is liable" to the class as a whole. *Id.*, at 1, 6. Pfizer asserts further that its motion to strike the nationwide class allegations is properly decided prior to discovery because it presents a legal question based solely on the "wide" variation in the "laws of [the] 51 jurisdictions" that would apply to those claims. Def. Reply Mem. in Supp. Mtn. to Strike, dated Jan. 27, 2017 (Dkt. No. 33) (Def. Strike Reply Mem.), at 1.

Plaintiffs counter that it is premature and inappropriate to strike their nationwide class allegations prior to discovery. Pl. Opp. to Mtn. to Strike, dated Jan. 10, 2017 (Dkt. No. 30) (Pl. Strike Opp. Mem.), at 1, 3. Moreover, according to plaintiffs, this Court can apply New York law to the claims of the entire Nationwide Class, because the differences in state law are not "material." *Id.* at 10. Even if the Court "opt[s] to apply various state laws to Plaintiffs' common law claims," plaintiffs argue, certification of the Nationwide Class would be appropriate because plaintiffs' claims "rest largely (if not entirely) on Defendant's uniform conduct" in labeling and marketing the ChapStick Products, and also because the Court could use sub-classes to make adjudication manageable. *Id.* at 13.

### 3. Motion to Stay

On April 4, 2017 – while its motions to dismiss and strike were still pending – Pfizer moved to stay this action under the doctrine of primary jurisdiction. (Dkt. No. 35.) Pfizer argued that because the Food and Drug Administration (FDA) issued a request for public comments on the definition of the term "natural" in the context of food labeling in November 2015, this Court should delay adjudication of plaintiffs' claims pending "the FDA's forthcoming guidance" on that issue. Def. Mem. in Supp. of Mtn. to Stay, dated Apr. 4, 2017 (Dkt. No. 36), at 1-2, 9.

Your Honor denied Pfizer's stay motion on May 23, 2017, holding that "the application of the primary jurisdiction doctrine would be inappropriate here, where the FDA has shown no indication that it is likely to address the specific issue raised by Plaintiffs" – that is, the definition of "natural" in the context of cosmetics labeling – and that "'even if the FDA were to formally define the term "natural," it would not dispose of plaintiffs' state law claims.'" Memorandum Order dated May 23, 2017 (Dkt. No. 40), at 5-6 (quoting *In re Frito-Lay N. Am., Inc. All Natural Litig.*, 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013)).

The same day, Your Honor referred this action to me for general pretrial management and for report and recommendation on Pfizer's motion to dismiss and motion to strike. (Dkt. No. 41.) Following an initial case management conference on July 11, 2017, I issued a written order (Dkt. No. 48) limiting the scope of discovery pending resolution of those motions, scheduling oral argument, and granting the parties leave to file supplemental letters identifying additional authorities upon which they intended to rely at oral argument, which they did on July 14, 2017 (Dkt. Nos. 52, 53).

## DISCUSSION

## I.     THE MOTION TO DISMISS

As an initial matter, the parties disagree about the pleading standard applicable to plaintiffs' unjust enrichment and negligent misrepresentation claims, and to plaintiff Tyman's FDUTPA claim. Pfizer asserts that the heightened standard of Fed. R. Civ. P. 9(b) applies, and that those claims should be dismissed because plaintiffs fail to allege their injuries with specificity. Def. 12(b)(6) Mem. at 1. For the reasons set forth below, I agree that Rule 9(b) applies to plaintiffs' negligent misrepresentation and unjust enrichment claims, and to Tyman's FDUTPA claim. However, Rule 9(b) does not require plaintiffs to calculate their damages "with particularity," and consequently does not require the dismissal of any of plaintiffs' claims.

Pfizer also argues that, regardless of the applicable pleading standard, plaintiffs' express warranty, unjust enrichment, and negligent misrepresentation, along with all claims based on statements in any materials other than the ChapStick Product labels, should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief can be granted. According to Pfizer, plaintiff Robinson's negligent misrepresentation claim fails because Robinson does not allege the existence of a "special relationship" with Pfizer as required under New York law,

and plaintiff Tyman's negligent misrepresentation claim is barred under Florida's economic loss doctrine. Def. 12(b)(6) Mem. at 13-14. Plaintiffs' claims for unjust enrichment fail, according to Pfizer, because they duplicate plaintiffs' legal claims and because plaintiffs "do not adequately allege that they conferred a sufficiently direct benefit on Pfizer." *Id.* at 18-20. Pfizer argues that plaintiffs' breach of express warranty claims should be dismissed because plaintiffs do not adequately allege that they provided timely notice of the alleged breach. *Id.* at 15-17. Finally, Pfizer asserts that all of plaintiffs' claims fail to the extent they are based on alleged misstatements other than those appearing on the ChapStick Product labels, because neither plaintiff alleges that he or she saw Pfizer's television ads or Websites, "much less that they affected his or her purchasing decision." *Id.* at 4-5, 8 n.2.

For the reasons set forth below, I conclude that plaintiffs' negligent misrepresentation claims, express warranty claims, and advertising-based claims fail for the reasons asserted by Pfizer, and that plaintiffs' unjust enrichment claims fail because they are based upon the same factual allegations and seek the same relief as their legal claims, which are not alleged to be inadequate.

## A.    Legal Standards

### 1.    Rules 8(a) and 12(b)(6)

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." If that statement fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Generally, when a court dismisses a complaint pursuant to Rule 12(b)(6), "the dismissal should be without prejudice to replead[ing]." *Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *7 (S.D.N.Y. Aug. 1, 2012) (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42-43 (2d Cir. 1988)).

When faced with a Rule 12(b)(6) motion, the trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, those factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court may not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). This pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 385 (S.D.N.Y. 2009) (internal quotation marks omitted). At a minimum, the complaint must give each defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Littlejohn v. City of New York*, 795 F.3d 297, 309 (2d Cir. 2015) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 507 (2002)).

## 2. Rule 9(b)

A higher pleading standard applies to allegations of "fraud or mistake," which "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). *See also Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001) (Rule 9(b) "governs the pleading of fraud claims and it requires that plaintiff plead fraud with particularity.")

Rule 9(b) "ordinarily requires a complaint alleging fraud to '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent.'" *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (quoting *U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016)). "Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *U.S. ex. Rel. Polansky v. Pfizer, Inc*, 2009 WL 145682 (E.D.N.Y. May 22, 2009) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). However, "Rule 9(b) does not require that claimants plead injury with particularity," even in fraud claims. *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 305 (S.D.N.Y. 2011) (quoting *Xcellence, Inc. v. Arkin Kaplan Rice LLP*, 2011 WL 1002419, at *5 (S.D.N.Y. Mar. 15, 2011)). *See also Cohen v. Sudler & Hennessey, LLC*, 2010 WL 3431534, at *2 n.3 (S.D.N.Y. Aug. 31, 2010) (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)) ("[Defendant] argues that the heightened particularity requirements for fraud claims set forth in [Rule 9(b)] apply to the element of damages. Under Rule 9(b), however, a plaintiff must only allege with particularity the circumstances of the fraud."). In addition, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

"[T]he adequacy of particularized allegations under Rule 9(b) is case- and context-specific." *Fabula*, 865 F.3d at 81 (quoting *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 236 (2d Cir. 2015)). "Failure to satisfy the Rule 9(b) standard, if applicable, is grounds for dismissal." *McBeth v. Porges*, 171 F. Supp. 3d 216, 223 (S.D.N.Y. 2016) (citing *Lerner*, 459 F.3d at 293 and *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010). However, complaints dismissed under Rule 9(b) "are almost always dismissed with leave to amend." *Amos v. Biogen Idec Inc.*, 28 F. Supp. 3d 164, 173 (W.D.N.Y. 2014) (quoting *Luce v. Edelstein*, 802 F.2d 49, 56 (2nd Cir.1986)) (internal quotation marks omitted).

## B.    Rule 9(b) Applies to Plaintiffs' Negligent Misrepresentation, Unjust Enrichment, and FDUTPA Claims

Courts in this District are "bound by Second Circuit law pertaining to the applicability of Rule 9(b)" to particular claims, regardless of the source of the substantive law giving rise to those claims. *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369, at *13 n.9 (S.D.N.Y. Nov. 12, 2015) (collecting cases). Likewise, "[i]n determining whether Plaintiffs have satisfied the Rule 9(b) pleading standard, Second Circuit law governs." *Hasemann v. Gerber Prod. Co.*, 2016 WL 5477595, at *14 n.18 (E.D.N.Y. Sept. 28, 2016) (citing *In re Ford Fusion & C-Max Fuel Econ. Litig.,* 2015 WL 7018369, at *13). *See also Nw. Mut. Life Ins. Co. v. Banc of Am. Sec. LLC*, 254 F. Supp. 2d 390, 396 (S.D.N.Y. 2003) ("[B]ecause Rule 9(b) is a rule promulgated pursuant to a federal statute, this Court is required to follow the precedent of the Court of Appeals for the Second Circuit with respect to the interpretation and application of Rule 9(b).").

 "By its terms, Rule 9(b) applies to 'all averments of fraud,'" *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004), "and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Id.* Thus, the heightened pleading requirements of Rule 9(b) apply to "any claim that 'sounds in fraud,' regardless of whether fraud is an element of the claim." *Matsumura v. Benihana Nat. Corp.*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008) (quoting *Rombach*, 355 F.3d at 170). A claim "sound[s] in fraud" if "the wording and imputations of the complaint are classically associated with fraud," *Rombach*, 355 F.3d at 167, 172 (internal citations and quotations omitted). In applying this "pragmatic standard," courts "reject plaintiffs' efforts to 'characterize claims by the label used in the[ir] pleading,'" *Matsumura*, 542 F. Supp. at 251 (quoting *Rombach*, 355 F.3d at 172), and apply Rule 9(b) "to any cause of action that bears a close relationship to fraud or mistake." *Id.* (collecting cases). *See also Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 443 (S.D.N.Y. 2015) ("Courts have found

non-fraud claims to sound in fraud where the underlying conduct alleged has been fraud or closely linked with fraudulent behavior, such as claims for which fraud is a necessary element or claims that the other party has attempted to induce action through misrepresentations or material omissions.").

To determine whether Rule 9(b) applies, courts conduct a "case-by-case analysis of particular pleadings to determine whether 'the gravamen of the complaint is plainly fraud.'" *In re Refco, Inc. Sec. Litig.,* 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007) (quoting *Rombach*, 355 F.3d at 172). In the consumer fraud context, as elsewhere, courts "tend to take a holistic approach." *Miller v. Hyundia Motor Am.*, 2016 WL 5476000, at *14 (S.D.N.Y. Sept. 28, 2016) (collecting cases). "As part of this inquiry, courts look for references to 'specific misrepresentations' in the complaint . . . [and] allegations of 'fraudulent concealment,' 'fraudulent misrepresentations,' and 'deceptive practices,' based on a defendant's 'knowing acts.'" *Id.* at *14 (internal citations omitted). *Id.* Where the case as a whole is premised on allegations of this nature, the trial court "is not 'required to sift through allegations of fraud' in order to find claims not subject to Rule 9(b)." *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369, at *14 (applying Rule 9(b) to, *inter alia*, plaintiffs' unjust enrichment and FDUTPA claims).

### 1.    Negligent Misrepresentation

Courts in this Circuit disagree as to whether negligent misrepresentation claims are always or only sometimes subject to Rule 9(b). *Compare, e.g.*, *Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185, at *10 n.4 (S.D.N.Y. July 20, 2016) (citing *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004)) ("The Second Circuit has not definitively ruled that claims for negligent misrepresentation must be pled with the particularity that Rule 9(b) requires, but courts in this District frequently hold that Rule 9 applies.") *with*

*Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 349–50 (E.D.N.Y. 2014) (construing the Second Circuit's opinion in *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566 (2d Cir. 2005) as holding that Rule 9(b) applies to all claims for negligent misrepresentation arising under New York law). "Whether or not Rule 9(b)'s heightened standard applies to all claims of negligent misrepresentation," however, it must be applied where "the claim sounds in fraud." *Riker v. Premier Capital, LLC*, 2016 WL 5334980, at *5 (S.D.N.Y. Sept. 22, 2016). *See also Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 705 (S.D.N.Y. 2012) ("District courts in this Circuit have concluded that the Rule is applicable to negligent misrepresentation claims that are premised on fraudulent conduct.").

### 2. Unjust Enrichment

A similar analysis governs the application of Rule 9(b) to unjust enrichment claims: "A complaint must satisfy the particularity requirement of Rule 9(b) only where the alleged unjust enrichment is premised on fraudulent acts." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) (*citing Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 471 (E.D.N.Y. 2013)). *See also Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010) (citing *Welch v. TD Ameritrade Holding Corp.*, 2009 WL 2356131, *21 (S.D.N.Y. July 27, 2009)) (Unjust enrichment claims "must be pled with specificity when the underlying acts are allegedly fraudulent.").

### 3. FDUTPA

In this Circuit, FDUTPA claims are treated in much the same way as negligent misrepresentation and unjust enrichment claims. "[T]he requirement of heightened pleading appears to turn on [whether] the FDUTPA claim sounds in fraud." *Segovia v. Vitamin Shoppe, Inc.*, 2016 WL 8650462, at *8 (S.D.N.Y. Feb. 5, 2016) (internal citations omitted). *See also Irvine*

*v. Kate Spade & Co.*, 2017 WL 4326538, at \*2 (S.D.N.Y. Sept. 28, 2017) (quoting *Blair v. Wachovia Mortg. Corp.*, 2012 WL 868878, at \*3 (M.D. Fla. Mar. 14, 2012)) ("[T]he prevailing view is that Rule 9(b) applies only 'where the gravamen of the claim sounds in fraud.'"); *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at \*25 (S.D.N.Y. July 15, 2016) ("As [plaintiff's] FDUTPA claim sounds in fraud . . . she must meet the heightened pleading standards of Rule 9(b)."); *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369, at \*16 (quoting *Morano v. BMW of N. Am., LLC,* 928 F. Supp. 2d 826, 833 (D.N.J. 2013)) ("where FDUTPA claims do happen to sound in fraud, federal courts will apply the heightened pleading standard of Rule 9(b)").[7]

### 4.    The Gravamen of Plaintiffs' Complaint is Fraud

Here, as in *Rombach,* the "gravamen" of plaintiffs' complaint is "plainly fraud." 355 F.3d at 172. Plaintiffs allege, repeatedly, that Pfizer intentionally made "deceptive," "fraudulent," "misleading," and "demonstrably false" factual representations in labeling and marketing the ChapStick Products, Compl. ¶¶ 7, 8, 15, and purposefully concealed material information about

---

[7] Florida courts "disagree on whether allegations of deceptive practices under the FDUTPA must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard." *Al Amjad Ltd. v. Ocean Marine Engines, LLC*, 2017 WL 1365580, at \*5 n.7 (M.D. Fla. Apr. 14, 2017) (collecting cases); *see also In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1323 n.8 (S.D. Fla. 2013) (collecting cases). Some courts within the Eleventh Circuit have held flatly that FDUTPA claims "must be pled with particularity.'" *See Wrestlereunion, LLC v. Live Nation Television Holdings, Inc.*, 2008 WL 3048859, at \*3 (M.D. Fla. Aug. 4, 2008) (quoting *Fla. Digital Network, Inc. v. N. Telecom, Inc.*, 2006 WL 2523163, at \*5 (M.D. Fla. Aug. 30, 2006)). Others have reached the opposite conclusion. *See, e.g.*, *Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009) (internal quotations and citations omitted) ("The requirements of Rule 9(b) do not apply to claims under the FDUTPA [because the] FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts such as fraud, and therefore, the plaintiff need not prove the elements of fraud to sustain an action under the statute."). Still others have taken the approach of courts in this Circuit, concluding that "where the gravamen of the claim sounds in fraud . . . the heightened pleading standard of Rule 9(b) would apply." *Blair*, 2012 WL 868878, at \*3.

them, *id.* ¶ 50, to induce consumers to rely upon that information and buy and pay premiums for the ChapStick Products. *Id.* ¶¶ 56-63. These "common factual allegations," *id.* at 7, are incorporated into each and every one of plaintiffs' causes of action, *see id.* ¶¶ 92, 103, 114, 125, 136, 145, and in some cases are repeated even within the causes of action that plaintiffs now claim to be exempt from Rule 9(b). *See, e.g., id.* ¶ 141 (alleging, as part of plaintiffs' unjust enrichment claim, that Pfizer was enriched as a result of its "deceptive, fraudulent, and misleading labeling, advertising, marketing, and sale of the Products").[8] Moreover, plaintiffs go out of their way to emphasize the primacy of their fraud allegations:

> This case is not about whether the unnatural ingredients added to the Products are 'safe' as personal care product additives. This is case is not about whether the ingredients in the [ChapStick Products] are 'naturally sourced' or 'naturally derived.' This case *is* about whether the Products are '100% NATURAL' as Pfizer has fraudulently claimed.

*Id.* ¶ 7 (emphasis in the original).

These are "classic fraud allegations, that is, allegations of misrepresentations and omissions made with intent to defraud upon which plaintiffs relied." *In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 691 (S.D.N.Y. 2000) (internal citations omitted); *See also Rombach*, 355 F.3d at 172 (where the "wording and imputations" of plaintiffs' complaint were "classically associated with fraud," Rule 9(b) applied). Accordingly, the heightened pleading standard of Rule 9(b) applies to plaintiffs' negligent misrepresentation, unjust enrichment, and FDUTPA claims. *See, e.g., In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369, at *16, 19 (applying Rule 9(b) to FDUTPA and unjust enrichment claims where gravamen of complaint was fraud); *Riker*,

---

[8] *See also* Compl. ¶¶ 147-49 (asserting negligent misrepresentation claims on the grounds that "Pfizer advertised, labeled, packaged, marketed, distributed and sold the Products as '100% NATURAL' and 'Clinically Proven,' when they were not," plaintiffs relied on Pfizer's misrepresentations and omissions in purchasing the ChapStick Products, and Pfizer "knew, or should have known, that the Products are not 100% Natural and Clinically Proven").

2016 WL 5334980, at *5 ("Whether or not Rule 9(b)'s heightened standard applies to all claims of negligent misrepresentation, it does apply here, as the claim sounds in fraud."); *Hughes*, 930 F. Supp. 2d at 471 (applying Rule 9(b) to New York unjust enrichment and negligent misrepresentation claims); *Belcastro v. Burberry Ltd.*, 2017 WL 744596, at *6 (S.D.N.Y. Feb. 23, 2017) (concluding that heightened pleading standard applied to Florida negligent misrepresentation claims); *Segovia*, 2016 WL 8650462, at *8 (applying Rule 9(b) where plaintiffs alleged that defendant's "acts underlying the FDUTPA claim" constituted fraud).

### C.   Rule 9(b) Does Not Require Plaintiffs to Plead Their Damages Calculation with Particularity

Pfizer asserts that plaintiffs' injury allegations are insufficient under Rule 9(b). "While plaintiffs repeatedly allege that they paid a premium for the [Chapstick Products], they do not specify the prices they actually paid," and they do not "detail the prices of alternative lip balm products that plaintiffs would have purchased but for Pfizer's purported fraud." Def. 12(b)(6) Mem. at 3. Plaintiffs counter that they "do not, at the pleading stage, need to allege specific prices, nor that they would have paid less for specific comparable products," to adequately allege a "price premium" theory of injury under the Rule 9(b) pleading standard. Plaintiffs add that "the calculation of the exact price premium will be established through discovery and expert testimony." Pl. 12(b)(6) Opp. Mem. at 8, 9. Plaintiffs are correct.

"Rule 9(b) does not require that claimants plead injury with particularity in fraud claims." *Sawabeh Info. Servs. Co.*, 832 F. Supp. 2d at 305. "[I]t is the pleading of the circumstances of the alleged fraud with a certain amount of precision that serves [Rule 9(b)'s] purpose by apprising the defendant . . . of the nature of the claim and the acts or statements or failures to disclose relied upon by the plaintiff as constituting the fraud being charged." *Fabula*, 865 F.3d at 86-87 (quoting 5A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*

§ 1297 (3d ed. April 2017 Update)). *See also Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013) (fraud and negligent misrepresentation are adequately pled under Rule 9(b) where the complaint "fully specifies" the "who," "what," "when," and "where" of the fraudulent statement, as well as "how that statement was false.").

Pfizer relies heavily on *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 533 (D.N.J. 2011), which found injury allegations comparable to those asserted by plaintiffs here insufficient in a claim brought under the New Jersey Consumer Fraud Act (NJCFA), N.J.S.A. §§ 56:8-1 *et seq. See* Def. 12(b)(6) Mem. at 10-12; Def. Reply Mem. in Supp. of Partial Mtn. to Dismiss, dated Jan. 27, 2017 (Dkt. No. 34) (Def. 12(b)(6) Reply Mem.), at 5-6.[9] Pfizer characterizes *Lieberson* as holding that Rule 9(b) requires plaintiffs asserting claims that sound in fraud to plead injury and damages, including the details of their "price premium" damages claim, with particularity. *See, e.g.*, Def. 12(b)(6) Mem. at 18 (quoting *Lieberson*, 865 F. Supp. 3d at 541) ("Because plaintiffs' 'allegations concerning the[ir] ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss' under Rule 9(b), . . . [they are] inadequately pled and should be dismissed."). I disagree. *Lieberson* holds that the NJCFA itself imposes heightened injury pleading requirements, not that Rule 9(b) imposes comparable requirements.

The NJCFA creates a private right of action for "'[a]ny person who suffers any ascertainable loss of moneys or property'" as a result of certain unlawful commercial practices.

---

[9] The plaintiff in *Lieberson* alleged she purchased defendant's baby bath products in reliance upon deceptive and misleading misrepresentations and omissions about those products, including that they were "clinically proven" to help babies sleep better. 865 F. Supp. 2d at 533. She asserted claims under the NJCFA and for breach of the implied warranty of merchantability. Plaintiff alleged that defendant charged a "'premium of at least $1.00'" and that "comparable products 'cost at least [25%] less,'" but did not allege the actual prices she paid, the "general" price of the products at issue, or the "identity or the cost of any allegedly comparable products." *Id.* at 541.

*Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 246, 872 A.2d 783, 791 (2005) (quoting

N.J.S.A. 56:8–19). Under the NJCFA, "a plaintiff must demonstrate three elements: (1) unlawful

conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection

between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Lieberson*, 865

F. Supp. 2d at 538. The NJCFA "essentially replaces reliance, an element of proof traditional to

any fraud claim, with the requirement that plaintiff prove ascertainable loss." *Int'l Union of

Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389, 929 A.2d 1076,

1086 (2007). To plead an "ascertainable loss" for purposes of the NJCFA, "New Jersey Courts

require . . . the consumer to quantify the difference in value between the promised product and the

actual product received . . . Failure to quantify this difference in value results in the dismissal of a

claim." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99, 101 (D.N.J. 2011); *accord In re

Riddell Concussion Reduction Litig.,* 77 F. Supp. 3d 422, 439 (D.N.J. 2015).

    The *Lieberson* court held that, "absent any specific information concerning the price of the

Products or the price of any comparable products, Plaintiff's allegations concerning the

ascertainable loss are nothing more than unsupported conclusory statements that are insufficient

to withstand a motion to dismiss." *Lieberson*, 865 F. Supp. 2d at 541-42. As is clear from the

court's language, however, it expressly tied that holding to the NJCFA "ascertainable loss"

requirement. *See also id.* at 542 n.4 ("the Court is dismissing Plaintiff's NJCFA claim for failing

to sufficiently plead the second prong of an NJCFA claim.").[10] Separately, the *Lieberson* court

explained that, to satisfy the Rule 9(b) pleading standard, an NJCFA plaintiff "must plead or allege

_____

[10] Other courts in the same District have interpreted the NJCFA "ascertainable loss" requirement
less stringently. *See, e.g.*, *Lynch*, 2013 WL 2645050, at *8 (internal citations and quotations
omitted) (The NJCFA "does not require a plaintiff to prove actual out-of-pocket loss in order to
successfully state a claim. An ascertainable loss may occur where a consumer received less than
what he was promised. The payment of a price premium may satisfy the injury requirement.").

the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* at 538 (quoting *Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007)). Thus, the court considered the adequacy of plaintiff's injury allegations in connection with its NJCFA analysis, not its Rule 9(b) analysis. *See id.* at 538-41 (analyzing, under Rule 9(b), the sufficiency of plaintiffs' allegations concerning the content of the alleged misstatements and omissions, and where and when plaintiffs viewed them).

Neither plaintiff here has asserted claims under the NJCFA. Further, as discussed in more detail below, none of the claims they do assert requires them to plead injury or damages with the specificity required by the *Lieberson* court for NJCFA claims.

### 1.      Plaintiff Tyman's FDUTPA Claim

"To recover under [FDUTPA], 'a party must allege (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.'" *Belcastro*, 2017 WL 744596, at *6 (*quoting Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012)); *see also KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. Dist. Ct. App. 2008) ("Although not specifically identified in the statute, there are basically three elements that are required to be alleged to establish a claim pursuant to the FDUTPA: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages."). Pfizer moves to dismiss plaintiff Tyman's FDUTPA claim on the sole ground that she fails to plead injury and damages with the "specificity" required by Rule 9(b). *See* Def. 12(b)(6) Mem. at 10. Accordingly, for the purposes of Pfizer's partial motion to dismiss, my analysis of the FDUTPA claim is limited to the pleading requirements for the "actual damages" element.

Under the FDUTPA, "'the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *In re*

*Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d at 439 (quoting *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006)). *See also Belcastro*, 2017 WL 744596, at *6 (quoting *Rollins, Inc.*, 951 So. 2d at 869 (same)). Some courts – in the District of New Jersey – have adopted Pfizer's view that this language requires FDUTPA plaintiffs, like NJCFA plaintiffs, to precisely quantify their damages at the outset of a case by alleging the prices and premiums they paid and the prices of comparable products. *See, e.g., In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d at 439 (where the "Amended Complaint merely states that each plaintiff paid a 'price premium' for Defendants' product and fails to identify the specific price paid or allege any other facts necessary to plead injury or ascertainable loss," plaintiffs failed to adequately plead injury under the NJCFA and FDUTPA); *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 2015 WL 4591236, at *39 (D.N.J. July 29, 2015) ("Plaintiffs' pleading as to ascertainable loss under the FDUTPA is infirm for the same reasons as their NJCFA claim.")

Courts in this Circuit disagree, as do most Florida courts. *Hasemann v. Gerber Products Co.* specifically rejected the line of New Jersey cases dismissing FDUTPA claims "for failure to allege the price of comparable products." 2016 WL 5477595, at *22 & n.26 (disagreeing with the holdings of *Riddell* and *Caterpillar* to the extent they require plaintiffs to plead the exact values of defendant's products and comparable products and denying defendant's motion to dismiss plaintiffs' FDUTPA claim). The *Hasemann* court held that, to the contrary, plaintiffs' allegations that they "paid a premium for the Infant Formula" were "sufficient to plead damages" under the FDUTPA. *Id.* at *21.[11] *See also Marty v. Anheuser-Busch Companies, LLC*, 43 F. Supp. 3d 1333,

---

[11] In *Hasemann*, the plaintiffs alleged injury as follows: "Plaintiffs purchased the Infant Formula in 12-ounce and 23-ounce containers, for prices ranging between $16–$17 and $25–$26, respectively. According to Plaintiffs, Defendant 'inflated' the price of the Infant Formula based on its false and misleading representations. Plaintiffs assert that they would not have paid 'these inflated prices' had they known that the Infant Formula does not reduce the risk that infants will

1346 (S.D. Fla. 2014) ("[U]nder Florida law, a plaintiff who alleges that he or she has paid a premium price for a product as a result of a defendant's misrepresentation has pled damages under FDUTPA."); *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 620 (E.D. Mich. 2017) (quoting *Hasemann*, 2016 WL 5477595, at *22) (rejecting "'the conclusion that a FDUTPA claim requires a plaintiff to plead the price of comparable products in order seek damages under the FDUTPA'").

I too reject Pfrizer's reading of the FDUTPA, and conclude that plaintiff Tyman has adequately alleged injury for purposes of her FDUTPA claim. She asserts that she "paid money for the promised benefits and natural properties of the [ChapStick] Products . . . but did not obtain the full value of the advertised [Products] due to Pfizer's misrepresentations and omissions," Compl. ¶ 75, and that she "purchased, purchased more of, or paid more for, the Products than [she] would have had [she] known the truth about the Products." *Id.* ¶ 76. That is enough. *See, e.g.*, *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d at 1333 (concluding, after applying Rule 9(b) pleading standard to FDUTPA claim, that plaintiffs adequately pleaded causation and damages by alleging "that they relied on WhiteWave's representations when buying the DHA-fortified milk products, that they would not have purchased the products but for WhiteWave's misrepresentations, and that they were damaged in the amount of the difference between the premium price paid for the DHA-fortified milk products and the price they would have paid for other milk products.").

### 2. Negligent Misrepresentation and Unjust Enrichment

Plaintiffs' price premium allegations are also sufficient for purposes of their negligent misrepresentation and unjust enrichment claims. In *Ackerman v. Coca-Cola Co.*, 2010 WL

---

develop allergies or that the FDA did not endorse Defendant's qualified health claim." 2016 WL 5477595 at *4.

2925955 (E.D.N.Y. July 21, 2010), the court found the allegation that plaintiff "purchased vitaminwater's 'revive' and 'multi-v' flavors at their premium price approximately one to two times per week between October 2007 and October 2008 from various drug stores such as Duane Reade located in New York" to be "suffic[ient] to plead plaintiffs['] New York claims," including negligent misrepresentation and unjust enrichment, with "particularity," and denied defendants' motion to dismiss as to those claims. *Id.* at \*26.[12] *See also Jernow v. Wendy's Int'l, Inc.*, 2007 WL 4116241, at \*5 (S.D.N.Y. Nov. 15, 2007) (Swain, J.) (holding, without any discussion of Rule 9(b), that plaintiff who "alleged that he paid a premium for Wendy's food products that was based on inaccurate representations regarding the trans fat content of those products" adequately pled an unjust enrichment claim under New York law); *Lynch v. Tropicana Prod., Inc.*, 2013 WL 2645050, at \*7 (D.N.J. June 12, 2013) (plaintiffs' allegation that they "paid a price premium to Tropicana due to the alleged mislabeling . . . satisfied the Rule 9(b) standard.").

Since neither Rule 9(b) nor the substantive laws governing plaintiffs' common law claims requires them to plead injury or damages with "particularity," these claims should not be dismissed pursuant to Rule 9(b).

---

[12] Pfizer argues that *Ackerman* "involved far more detailed claims of economic injury" because plaintiffs in that case "explicitly allege[d] that [d]efendants command a premium price for vitaminwater by distinguishing it from soft drinks (including their own)." Def. 12(b)(6) Reply Mem. at 4 (quoting *Ackerman*, 2010 WL 2925955, at \*23, 36). I do not find that allegation to be "far more detailed" than – or even very different from – plaintiffs' allegation here that Pfizer commanded a premium price for the ChapStick Products in part by implicitly comparing them to competing products, regardless of manufacturer. *See, e.g.*, Compl. ¶¶ 61-63 (Pfizer "knew and intended that consumers would pay a premium for natural products . . . and products that have been clinically proven," and made the "100% Natural" and "clinically proven" representations to induce them to purchase the ChapStick Products instead of "a competing product" or "an alternate regimen.").

**D. Plaintiffs' Negligent Misrepresentation Claims (Count VI) Should be Dismissed Pursuant to Rule 12(b)(6)**

**1. New York Law**

To state a claim for negligent misrepresentation under New York law, a plaintiff must allege: "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information [provided by defendant to plaintiff] was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180, 944 N.E.2d 1104, 1109 (2011) (quoting *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148, 831 N.Y.S.2d 364 (2007)). The New York Court of Appeals has "reiterated time and again" that, to satisfy the first element, "there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity." *Parrott v. Coopers & Lybrand, L.L.P.*, 95 N.Y.2d 479, 483, 741 N.E.2d 506, 508 (2000) (collecting cases) (internal quotation marks omitted). *See also J.A.O. Acquisition Corp.*, 8 N.Y.3d at 148, 863 N.E.2d at 587 (A negligent misrepresentation plaintiff must demonstrate "the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff."); *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) ("New York strictly limits negligent misrepresentation claims to situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity.") (internal citation and quotations omitted).

Plaintiffs allege that Pfizer "holds itself out to the public as a trusted expert in the consumer healthcare products arena," knew what representations it made about the ChapStick Products, and also knew "what ingredients were added" to those Products. Compl. ¶¶ 56-57. Taken together, plaintiffs argue, these allegations sufficiently describe a "special relationship" between Pfizer and Robinson – indeed, between Pfizer and *all* of its customers – for purposes of plaintiff Robinson's

negligent misrepresentation claim. Pl. 12(b)(6) Opp. Mem. at 11-12. At oral argument, counsel confirmed that, in plaintiffs' view, Pfizer unilaterally "created a special relationship" with consumers by being a "large pharmaceutical company" and including the statement "clinically proven to make your lips healthier" on ChapStick Product labels. Tr. of July 18, 2017 Hrg. (Dkt. No. 54), at 37:6-11; *see also id.* 38:2-11.[13] Pfizer argues that, to the contrary, because plaintiff Robinson does not allege any facts "suggesting that he was in a fiduciary or other close relationship of trust with Pfizer," or that he "has any direct relationship with Pfizer at all," he fails to allege "the existence of a 'special relationship' capable of giving rise to a claim for negligent misrepresentation." Def. 12(b)(6) Mem. at 12-14. Pfizer is correct.

Absent actual privity of contract, a negligent misrepresentation plaintiff in New York must demonstrate a relationship "so close as to approach that of privity" by alleging: "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance." *Sykes v. RFD Third Ave. 1 Assocs., LLC*, 67 A.D.3d 162, 165, 884 N.Y.S.2d 745, 747-48 (2009), *aff'd*, 15 N.Y.3d 370, 938 N.E.2d 325 (2010) (quoting *Parrott*, 95 N.Y.2d at 484, 718 N.Y.S.2d 709). *See also Mahoney*, 2016 WL 3951185, at *3 (citing *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014)). Here, there is no allegation that Robinson was a "known party" to Pfizer, nor that Pfizer "linked" its alleged misrepresentations to him. Robinson has therefore failed to allege facts that meet the *Sykes* test.

---

[13]    THE COURT:              So you're saying that the defendant in this case, Pfizer, can
                                         unilaterally create a special relationship merely by what it
                                         places on its labels?

         MR. RICHMAN:        I think that's precisely the intention here.

Moreover, in the commercial context, liability for negligent misrepresentation may be imposed "only on those persons who possess unique or specialized expertise" or who "are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263, 675 N.E.2d 450 (1996). A "closer degree of trust between the parties than that of the ordinary buyer and seller is required" to establish the existence of "'a special relationship . . . [capable of] giv[ing] rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech.'" *Eidelman v. Sun Prod. Corp.*, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) (*quoting Izquierdo v. Mondelez Int'l Inc.*, 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016)). "In general, a simple commercial relationship, such as that between a buyer and seller or franchisor and franchisee, does not constitute the kind of 'special relationship' necessary to support a negligent misrepresentation claim." *Century Pac., Inc. v. Hilton Hotels Corp.*, 2004 WL 868211, at *8 (S.D.N.Y. Apr. 21, 2004) Accordingly, the "vast majority of arms-length commercial transactions, which are comprised of casual statements and contacts, will not give rise to negligent misrepresentation claims." *Izquierdo*, 2016 WL 6459832, at *8.[14]

Nothing in the Complaint now before the Court distinguishes Robinson's purchase of ChapStick Products from the "vast majority of arms-length commercial transactions, which . . . [do] not give rise to negligent misrepresentation claims." In the absence of "'even [ ]bare, minimal

---

[14] Whether a "special relationship" exists between a plaintiff and a defendant in a commercial case is of course an "issue of fact," *Kimmell*, 89 N.Y.2d at 264, in the sense that the determination depends on a multi-factor test rather than a simple recitation of the defendant's title or status. That does not mean that a plaintiff's allegations concerning the existence of a "special relationship" can never be challenged under Rule 12(b)(6). It is the plaintiff's obligation to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Absolute Activist Value Master Fund Ltd.*, 677 F.3d at 65 (quoting *Iqbal*, 556 U.S. at 678). *See also Suez Equity Investors, L.P.*, 250 F.3d at 102 (applying *Kimmell* three-factor test to plaintiff's complaint and concluding that its detailed factual allegations plausibly posited the necessary relationship).

contact'" between the parties in a commercial transaction, "[n]o privity-like relationship exists."
*Mahoney*, 2016 WL 3951185, at *3 (quoting *Mandarin Trading Ltd.*, 16 N.Y.3d at 181). Similarly,
where "the statement at issue is directed at a faceless or unresolved class or persons, no duty of
care arises." *Greene v. Gerber Prod. Co.*, 2017 WL 3327583, at *25 (E.D.N.Y. Aug. 2, 2017)
(quoting *Aetna Cas. & Sur. Co.*, 404 F.3d at 584). New York state and federal courts have therefore
"consistently held" that "advertisements directed at consumers and intended to induce reliance"
are "not sufficient" to establish a "special relationship." *Stoltz v. Fage Dairy Processing Indus.,
S.A.,* 2015 WL 5579872, at *25 (E.D.N.Y. Sept. 22, 2015) (collecting cases).

Moreover, "expertise alone cannot create a special relationship where otherwise the
relationship between the parties is too attenuated." *Mandarin Trading Ltd.*, 16 N.Y.3d at 181
(affirming dismissal of negligent misrepresentation claim because "the pleadings fail to allege the
existence of any relationship," or even "bare, minimal contact," between the parties, and
distinguishing *Kimmell* on the ground that the defendant in that case "established a special
relationship with the plaintiffs" through his "financial skill and expertise . . . and his continued
attempts to communicate directly with the plaintiff to induce their investment."). *See also
Mahoney*, 2016 WL 3951185, at *3 (citing *Mandarin Trading Ltd.*, 16 N.Y.3d at 181) ("Expertise
alone cannot create a special relationship.").

To support their argument that the Complaint adequately alleges a "special relationship"
between Pfizer and Robinson, notwithstanding his status as "one of a large class of possible
consumers," *Mahoney*, 2016 WL 3951185, at *3, plaintiffs rely on *Hughes v. Ester C Co.*, 930 F.
Supp. 2d at 474-46. *See* Pl. 12(b)(6) Opp. Mem. at 12. The *Hughes* plaintiffs alleged that
defendants made multiple, specific misleading and deceptive statements about the health benefits
of their "Ester-C" products, which "contain[ed] large doses of vitamins," on product labels and on

their website. 930 F. Supp. 2d at 447-49 & n.1.[15] Plaintiffs asserted further that defendants "held themselves out as holding a type of special expertise regarding the purported health benefits of Ester-C," including by having an "Ask an Expert" section on their website, in which an "identified 'expert'" stated that he "'take[s] an Ester-C tablet daily, all year long, because it is gentler on the stomach *and because of all the clinical research that supports the use of the product*." *Id.* at 448-49, 475 (emphasis in original). Assessing "special relationship" and reasonable reliance simultaneously, and applying the *Kimmell* test, the Court found plaintiffs' allegations "sufficient" to "infer a special relationship between the parties." *Id.* at 474-75.

*Hughes* falls into a small minority of decisions that "infer" a "special relationship" between the parties to a commercial transaction without any allegation of direct contact between them.[16] Most federal courts dismiss New York negligent misrepresentation claims in consumer class actions where, as here, the claim is that the defendant unilaterally created a "special relationship" simply by virtue of selling the product or making the statements at issue. *See, e.g.*, *Stoltz*, 2015 WL 5579872, at *25 (the "requisite special relationship" may not be "based solely on Defendants' status as the manufacturer of the Total 0% Products because, if this alone were sufficient, a special

---

[15] The alleged misstatements included, among others: "#1 Pharmacist Recommended," "Immune Support," "Antioxidant Support," and "Enhanced Absorption," as well as longer descriptions of those purported benefits. 930 F.Supp.2d at 448-49 & n.1.

[16] In *Greene*, the Court found that plaintiffs had *not* alleged a "special relationship between themselves and Defendant" Gerber Products Co., which manufactured the infant formula at issue, 2017 WL 3327583, at *1, 26, but declined to dismiss the negligent misrepresentation claim because plaintiffs in that case "'emphatically alleged the other two [*Kimmell*] factors.'" *Id.* at *26 (quoting *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 188). Gerber represented that its infant formula "reduces the risk that infants will develop allergies," and that the FDA had "endorsed" that health claim, despite knowing – and being in a "unique position" to know – that the FDA had in fact rejected that claim, and that "at least one major study [] 'conclusively refuted'" that claim. *Id.* at *6, 26-27. Plaintiffs here make no comparable allegations suggesting the need for a "factual inquiry" into "whether a special relationship exists" between Pfizer and purchasers of the ChapStick Products. *Id.* at *27 (quoting *Suez Equity*, 250 F.3d at 104).

relationship would necessarily always exist for purposes of misbranded food claims, which is not the case."); *Segedie v. Hain Celestial Grp., Inc.*, 2015 WL 2168374, at *1, 14 (S.D.N.Y. May 7, 2015) (finding "nothing approximating privity" between the parties in a consumer class action involving food, body care and home care products allegedly labeled in a "misleading" manner); *Mahoney*, 2016 WL 3951185, at *3 (dismissing putative class action plaintiff's negligent misrepresentation claim for failure to plead a "relationship with the defendants" that "extended beyond that which exists between an ordinary consumer and a prescription drug manufacturer"); *Anschutz Corp.*, 690 F.3d at 115 ("Here, there are no allegations of any direct contact between Anschutz and the Rating Agencies. We therefore conclude that Anschutz has failed to state a claim for negligent misrepresentation under New York law.).

In my view, plaintiff Robinson's "special relationship" allegations would be insufficient even under *Hughes*, which "relied on the volume and content of the representations made by the defendant-manufacturer, taken together, to determine that the plaintiff-consumer had plausibly alleged a special relationship." *Eidelman*, 2017 WL 4277187, at *5. The *Eidelman* court, applying the *Hughes* standard, concluded that the allegedly false statements on defendants' website and product labels (that its laundry detergent was "the #1 Recommended brand by dermatologists, allergists and pediatricians for sensitive skin," "hypoallergenic," and "clinically proven to be mild on the skin," *id.*) did not "resemble the instances catalogued in *Hughes* in volume and substance." *Id.* Using *Hughes* as its "metric," the *Eidelman* court "[could] not conclude" that plaintiffs "plausibly alleged facts sufficient for the Court to infer that [a] 'special relationship'" existed between the parties, and dismissed their negligent misrepresentation claim. *Id.* (citing *Stoltz*, 2015 WL 5579872, at *25). *See also Mahoney*, 2016 WL 3951185, at *3 (no "special relationship" alleged with defendant manufacturer where fluoride tablets allegedly contained less fluoride than

stated on the product labels); *Segedie*, 2015 WL 2168374, at *14 (finding no "special relationship" with defendant manufacturer of body care products allegedly fraudulently labeled as "organic," "natural," or "all natural," and explaining, "Defendant's obligation to label products truthfully does not arise from any special relationship."); *Stoltz*, 2015 WL 5579872, at *25 (holding that neither consumer-directed advertising nor defendants' status as the manufacturer of the food product at issue established the requisite "special relationship," and collecting cases).

As in *Eidelman*, the misstatements alleged here (that the ChapStick Products are "100% Natural" and "clinically proven" to provide "healthier," "more youthful looking lips," Compl. ¶ 3), do not "resemble the instances catalogued in *Hughes* in volume and substance." *Eidelman*, 2017 WL 4277187, at *5. Indeed, if these statements were sufficient to create a "special relationship" between a lip balm manufacturer and the lip balm buying public, then the requisite special relationship "would almost always exist" for purposes of mislabeled cosmetics claims, "which is not the case." *Stoltz*, 2015 WL 5579872, at *25.

Accordingly, I respectfully recommend that plaintiff Robinson's negligent misrepresentation claim be dismissed with prejudice on the ground that he alleges no relationship with Pfizer "extend[ing] beyond that which exists between an ordinary consumer" and a manufacturer of personal care products, *Mahoney*, 2016 WL 3951185, at *3, and therefore cannot satisfy the "special relationship" requirement under New York law.

### 2. Florida Law

"To state a claim for negligent misrepresentation under Florida law, Plaintiff must allege, '(1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely . . .

on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.'" *Belcastro,* 2017 WL 744596, at *6 (quoting *McGee v. JP Morgan Chase Bank, NA*, 520 F. App'x. 829, 831 (11th Cir. 2013) (per curiam)). "Additionally, plaintiff must allege actual damages." *Belcastro*, 2017 WL 744596, at *6 (citing *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007)).

Pfizer argues that Tyman's negligent misrepresentation claim, asserted under Florida law, is barred by that state's "economic loss rule," which "prohibits a party in a product liability case from suing in tort for disappointed economic expectations." Def. 12(b)(6) Mem. at 14-15 (internal quotations and citation omitted). "[T]he economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.,* 110 So. 3d 399, 401 (Fla. 2013) (citing *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc*., 891 So.2d 532, 536 (Fla. 2004)). Under Florida law, "economic losses" are "disappointed economic expectations, which are protected by contract law, rather than tort law," *id.* (internal quotations and citations omitted); they include "'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits – without any claim of personal injury or damage to other property.'" *Id.* (quoting *Casa Clara Condominium Ass'n, Inc. v. Charpely Toppino and Sons, Inc.*, 620 So.2d 1244, 1246 (Fla. 1993)).

The parties agree that *Tiara* defines the scope of application of the economic loss rule under Florida law, *see* Hrg. Tr. 25:12-14; 36:3-18, and that, under *Tiara*, the economic loss rule applies only in products liability cases. *Id.* 25:12-14; Pl. 12(b)(6) Opp. Mem. at 13. They also agree that plaintiff Tyman alleges economic losses only. *See, e.g.*, Def. 12(b)(6) Mem. at 1 (Plaintiff Tyman "does not allege that Pfizer's alleged misconduct caused any personal injury or damage to

property); Pl. 12(b)(6) Opp. Mem. at 13-14 (characterizing the injury alleged here as "money paid for the product"). The parties disagree about whether this is a "products liability" case under *Tiara*. *Compare* Pl. 12(b)(6) Opp. Mem. at 13 ("the economic loss rule is limited to products liability tort actions, not the consumer protection and negligent misrepresentation actions at issue here") *with* Def. 12(b)(6) Reply Mem. at 8 ("*Tiara* did not suggest – much less hold – that fraud-based claims are outside the ambit of Florida's economic-loss rule where, as here, they arise from the sale of a consumer product."). I conclude that the economic loss rule applies, and therefore that plaintiff Tyman's negligent misrepresentation claim must be dismissed with prejudice.

The Florida Supreme Court held in *Tiara* that the economic loss rule "applies only in the products liability context." 110 S.3d at 407. Since *Tiara*, at least four district courts within the Eleventh Circuit have held that there is no negligent misrepresentation "exception" to the economic loss rule. If the gravamen of the case is that defendant's product failed to conform to its label, as in *W.W. Sports Importadora Exportadora e Comercial Ltda v. BPI Sports, LLC*, 2016 WL 9375202, at *2 (S.D. Fla. Aug. 11, 2016) (protein powders and other "nutraceutical products"), the economic loss rule bars tort claims, including negligent misrepresentation claims, seeking solely economic damages. *Id.* at *4. *See also Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1337–38 (S.D. Fla. 2013); *In re Takata Airbag Products Liab. Litig.*, 193 F.Supp.3d 1324, 1338 (S.D. Fla. 2016); *Burns v. Winnebago Indus., Inc.*, 2013 WL 4437246, at *3 (M.D. Fla. Aug. 16, 2013). As one district court recently explained, "To hold otherwise would allow the economic loss rule to be manipulated such that any time a purchaser received a defective product that did not cause any injuries or damage to other property, such a purchaser could assert claims for negligent and fraudulent concealment regarding the defect to avoid the economic loss rule." *Burns*, 2013 WL 4437246, at *3.

Accordingly, after *Tiara*, claims for negligent misrepresentation are "usually" barred by the economic loss rule where, as here, "there are claims for breach of warranty alongside tort claims and the allegations contained in both are similar." *Aprigliano*, 979 F. Supp. 2d at 1337. *See also In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d at 1338 ("agree[ing] with other courts in this Circuit" that the Florida Supreme Court "did not intend" in *Tiara* to "abridge the economic loss rule in the products liability setting to allow fraudulent inducement and negligent misrepresentation claims.").

In this case, plaintiff Tyman's negligent misrepresentation claim alleges that the ChapStick Products failed to conform to their label and, as in *Takata*, "depends upon precisely the same allegations as [her] warranty claim." 193 F. Supp. 3d at 1338-39. Both the warranty and tort claims allege that, notwithstanding their labels, the Products "are neither '100% NATURAL' nor 'Clinically Proven.'" *Compare* Compl. ¶ 131 (warranty claim) *with id.* ¶ 147 (negligent misrepresentation claim). Because "Florida's economic loss rule applies to all [] tort claims" that "pertain only to the quality of [defendant's] products" and "allege only economic harm arising from the claims, precisely what a breach of warranty claim would allege," *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1302 (S.D. Fla. 2017) (dismissing negligent misrepresentation and other tort claims asserted under Florida law on that basis), that rule bars the negligent misrepresentation claim asserted by plaintiff Tyman. I therefore recommend, respectfully, that plaintiff Tyman's negligent misrepresentation claim be dismissed with prejudice.

E.     **The Unjust Enrichment Claims (Count V) Should Be Dismissed Pursuant to Rule 12(b)(6)**

Plaintiffs' unjust enrichment claims, like their other common law claims, allege that Pfizer made "untrue" statements of fact, namely, that the ChapStick Products are "100% NATURAL" and "Clinically Proven"; that it did so to "induce Plaintiffs and the Class members to purchase,

and to pay a premium price for, the Products"; and that plaintiffs relied on those representations in purchasing the Products. Compl. ¶¶ 137-40. As a result of its "deceptive, fraudulent, and misleading" labeling, advertising, marketing, and sales, "Pfizer was enriched at the expense of Plaintiffs and the other Class members through the payment of the purchase price, and payment of a premium price, for the Products, thereby creating a quasi-contractual obligation on Pfizer to restore those ill-gotten gains to Plaintiffs and the Class Members." *Id.* ¶¶ 136-144. Plaintiffs do not allege that they lack an adequate remedy at law.

Pfizer seeks dismissal of both plaintiffs' unjust enrichment claims on the ground that they "merely duplicate" plaintiffs' presumptively adequate tort and warranty claims. Def. 12(b)(6) Mem. at 1, 17-18. In addition, Pfizer asserts, the unjust enrichment claims fail because plaintiffs do not allege that they purchased the ChapStick Products directly from Pfizer and therefore "do not adequately allege that they conferred a sufficiently direct benefit on Pfizer." *Id.* at 18. I conclude, for the reasons that follow, that plaintiffs have sufficiently alleged a direct economic benefit to Pfizer. However, they cannot proceed on an unjust enrichment theory under either New York or Florida law where, as here, their equitable claims are based upon the same factual allegations and seek the same relief as their legal claims, which they do not allege to be inadequate in any way.

### 1. Plaintiffs Adequately Allege a Direct Benefit to Pfizer

Under New York law, "a plaintiff cannot succeed on an unjust enrichment claim unless it has a sufficiently close relationship with the other party." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516, 973 N.E.2d 743, 746 (2012) (citing *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 831 N.Y.S.2d 760, 863 N.E.2d 1012 (2007)). The plaintiff "need not be in privity with the defendant," but the "connection" between a plaintiff purchaser and a defendant producer cannot be "too attenuated." *Sperry*, 8 N.Y.3d at 215; 863 N.E.2d at 1018. *See also Techno-Comp, Inc. v.*

*Arcabascio*, 130 F. Supp. 3d 734, 744 (E.D.N.Y. 2015) (citing *Georgia Malone & Co.*, 19 N.Y.3d at 517-18) ("some minimum dealings or contacts are required").

Similarly, in Florida, "no unjust enrichment claim will lie unless the plaintiff conferred a direct benefit on the defendant." *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1236 (S.D. Fla. 2015). However, "direct benefit" does not mean "direct contact, which is not required to state a claim for unjust enrichment." *Id.* at 1236-37 (collecting cases). Rather, "*some* benefit must *flow* to the party sought to be charged." *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 929 (E.D. Pa. 2012) (quoting *Coffee Pot Plaza Partnership v. Arrow Air Conditioning and Refrigeration, Inc.,* 412 So.2d 883, 884 (Fla. Dist. Ct. App. 1982)) (emphasis supplied by federal court).

The circumstances alleged here – that the defendant manufacturer "marketed its product directly to consumers, but sold its product through an intermediary, i.e. a retail outfit," *Romano v. Motorola, Inc.*, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) – satisfies the test under both states' laws. "While the [product] is ultimately sold through the retailer, [the manufacturer] is directly benefitted through profits earned from the sale of the [product]." *Id.* (denying motion to dismiss unjust enrichment claim under Florida law). *Accord Carriuolo v. Gen. Motors LLC*, 72 F. Supp. 3d 1323, 1326 (S.D. Fla. 2014) (denying motion to dismiss under Florida law where plaintiffs adequately alleged that they "conferred the required direct benefit upon Defendant" by purchasing deceptively marketed Cadillacs, notwithstanding that "the benefit passed through independent dealerships"); *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 233 (S.D.N.Y. 2012) (denying motion to dismiss under both Florida and New York law where "Plaintiffs plausibly conferred some benefit on Defendants, albeit indirectly," by purchasing the antidiuretic drug DDAVP "at elevated prices" through intermediaries, "and Defendants profited

from the individual demand of the DDAVP consumers"); *Cox v. Microsoft Corp.*, 8 A.D.3d 39, 40, 778 N.Y.S.2d 147, 149 (2004) (although plaintiffs were "indirect purchasers of Microsoft's software products," their "allegations that Microsoft's deceptive practices caused them to pay artificially inflated prices for its products state a cause of action for unjust enrichment" under New York law).

As the court explained in *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398 (E.D.N.Y. 2010):

> New York law does not require an unjust enrichment plaintiff to plead 'direct dealing,' or an 'actual, substantive relationship' with the defendant. It merely requires that the plaintiff's relationship with a defendant not be 'too attenuated.' For example, a product's indirect purchaser cannot assert an unjust enrichment claim against an entity that manufactured one of that product's *ingredients*. But the indirect purchaser can assert such an unjust enrichment claim against the manufacturer of the *product* itself.

*Id.* at 403-04 (emphasis in original; internal quotations and citations omitted).

Here, as in *Waldman*, the plaintiffs are indirect purchasers who – assuming the truth of their allegations – conferred a benefit on Pfizer by purchasing the Products at inflated prices, albeit through intermediary retailers. That is all that is required at this stage of the case.

### 2. Plaintiffs' Unjust Enrichment Claims are Duplicative of Their Legal Claims, Which They Do Not Allege to be Inadequate

Plaintiffs do not seriously dispute that their unjust enrichment claims are based upon the same alleged facts as all of their other claims, and seek to recover the same damages, on the same "price premium" theory, from the same defendant. Nonetheless, they argue that these claims "cannot be viewed as duplicative" because they "may pursue more than just price premium damages" in the future, and because the statute of limitation for unjust enrichment is longer, in some states, "than some of Plaintiffs' other claims." Pl. 12(b)(6) Opp. Mem. at 18. Under New York law, however, neither the theoretical prospect that plaintiffs could plead a different damages

theory in the future nor a potentially more generous statute of limitations can save an unjust enrichment claim from dismissal where the substance of the claim, as currently pleaded, "simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).[17]

"[U]njust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello*, 18 N.Y.3d at 790–91. "Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Eidelman*, 2017 WL 4277187, at *6 (quoting *Corsello*, 18 N.Y.3d at 790).[18] Here, plaintiffs allege that Pfizer *is* guilty of wrongdoing – the same wrongdoing that underlies their consumer fraud, negligent misrepresentation, and warranty claims – and that this wrongdoing is the source of Pfizer's "equitable obligation" to pay the same damages that plaintiffs plead in connection with their other tort and warranty claims. "Although a plaintiff 'may plead unjust enrichment in the alternative to his other claims,'" the unjust enrichment claim will not survive a motion to dismiss where the plaintiff "'fail[s] to explain how [it] is not merely duplicative of [his] other causes of action.'" *Cont'l Indus. Grp., Inc. v. Altunkilic*, 2017 WL 2895933, at *14 (S.D.N.Y. July 7, 2017) (quoting *Nelson v. MillerCoors, LLC*, 2017 WL 1403343, at *9 (E.D.N.Y. Mar. 31, 2017)).

---

[17] Plaintiffs provide no further detail concerning the alternative theories they "may pursue" in the future. Nor do they seek leave to amend for this purpose.

[18] In *Eidelman*, the court denied defendants' motion to dismiss plaintiffs' unjust enrichment claim, which asserted that defendant Costco – a retailer of the allegedly mislabeled product – unfairly benefitted from the inflated price that consumers paid for that product, even though the mislabeling was done by the manufacturer and Costco itself did not commit any deceptive act. 2017 WL 4277187, at *6. Since the unjust enrichment claim was asserted against a different defendant, and was based on different factual allegations from those made against the manufacturer, the court was not convinced that it could "deem this claim duplicative at this stage." *Id*. at *6 n.10.

Plaintiff Robinson's unjust enrichment claim therefore fails under New York law and should be dismissed. *See Corsello*, 18 N.Y.3d at 790 (unjust enrichment claim is "not available" where its underlying allegations "simply duplicate" plaintiffs' legal causes of action); *Ebin*, 2013 WL 6504547, at *7 (dismissing unjust enrichment claims under New York and New Jersey law where plaintiffs "failed to explain" how it is "not merely duplicative of their other causes of action.").[19]

There is some disagreement as to whether a similar rule applies to unjust enrichment claims asserted under Florida law. *See Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1268 (N.D. Fla. 2012) ("Various courts disagree as to whether the existence of an adequate legal remedy precludes a plaintiff from pleading a cause of action for unjust enrichment.") Pfizer relies on *Licul v. Volkswagen Grp. of Am., Inc.*, which dismissed plaintiffs' unjust enrichment claim as "duplicative of other counts in the Complaint" explaining that, under Florida law, "where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013) (internal citations omitted). *Accord Guerrero*, 889 F. Supp. 2d at 1356 (dismissing unjust enrichment claim because it "seeks recovery for the exact same wrongful conduct as in her FDUTPA claim") (collecting cases); *Nichols v. Wm. Wrigley Jr. Co.*, 2011 WL 181458, at *5 (S.D. Fla. Jan. 19, 2011) (dismissing unjust enrichment claim because plaintiff "seeks recovery for the exact same wrongful conduct as in his other claims" and in any event "has a remedy at law as a properly pled claim under Florida law"); *Am. Honda Motor Co. v.*

---

[19] Plaintiffs cite *In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356 (E.D.N.Y. 2010), in which, they assert, the court "sustain[ed] a nearly identical claim for unjust enrichment." Pls. 12(b)(6) Opp. Mem. at 17. In *Bayer Corp.*, however, defendant sought dismissal of the unjust enrichment claim on the ground that it was preempted by the Federal Food, Drug, and Cosmetic Act. *See id.* at 383-384. The court did not address – because the defendant apparently did not raise – the arguments raised by Pfizer here.

*Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) ("to properly state a claim for unjust enrichment, a party must allege that no adequate legal remedy exists").

Plaintiffs, for their part, rely on *Parker v. Am. Traffic Sols., Inc.*, 2015 WL 4755175 (S.D. Fla. Aug. 10, 2015), *appeal dismissed*, 835 F.3d 1363 (11th Cir. 2016), and *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d at 1311, both of which permitted unjust enrichment claims to proceed in tandem with contract or tort claims seemingly based on the same facts. *Parker* contains no analysis of the issue and cites no Florida state court decisions to support its conclusion that "Plaintiffs' decision to plead unjust enrichment in the alternative to its other claims does not preclude them from proceeding on their unjust enrichment claim through the motions to dismiss phase." 2015 WL 4755175, at *4. *In re Horizon Organic* cites *State Farm Mut. Auto Ins. Co. v. Physicians Injury Care Center, Inc.*, 427 Fed. App'x. 714 (11th Cir. 2011) (per curiam), *rev'd in part on other grounds sub nom. State Farm Mut. Auto Ins. Co. v. Williams*, 563 Fed. App'x 665 (11th Cir. 2014), which in turn cites *Williams v. Bear Stearns & Co.,* 725 So.2d 397 (Fla. Dist. Ct. App. 1998), for the proposition that while it is "generally true that equitable remedies are not available under Florida law when adequate legal remedies exist," that rule "does not apply to unjust enrichment claims." *See In re Horizon Organic*, 955 F. Supp. 2d at 1337 (quoting *State Farm*, 427 Fed. App'x at 722 (citing *Williams*, 725 So. 2d at 400)).

*Williams* does, indeed, state that the "general" rule in Florida, prohibiting equitable remedies where legal remedies exist, "does not apply to unjust enrichment." 725 So. 2d at 400. But *Williams* itself appears to exist in a vacuum; the only Florida case it cites for this point is *McNorton v. Pan Am. Bank of Orlando, N.A.*, 387 So. 2d 393 (Fla. Dist. Ct. App. 1980), which

says no such thing.[20] Nor, insofar as I have been able to determine, have any other Florida appellate courts held that claims for unjust enrichment may proceed in tandem with legal claims based on the same factual allegations without any showing that those claims are inadequate. *See*, *e.g.*, *Bowleg v. Bowe*, 502 So. 2d 71, 72 (Fla. Dist. Ct. App. 1987) (holding that plaintiff's unjust enrichment claims fails "because the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy," in that case an action on the parties' contract); *Liza Danielle, Inc. v. Jamko, Inc.*, 408 So. 2d 735, 738 (Fla. Dist. Ct. App. 1982) ("Lack of an adequate remedy at law is a prerequisite for equitable relief.").

I am unconvinced that there is an "unjust enrichment exception" to Florida's general rule that equitable relief is "not available where there is an adequate legal remedy." *Bowleg*, 502 So. 2d at 72. In this case, plaintiffs do not even allege that they lack adequate remedies at law. Nor do they argue that they could do so if given leave to amend. Moreover, their unjust enrichment claims "seek[ ] recovery for the exact same wrongful conduct as in [their] other claims." *Nichols*, 2011 WL 181458, at *5. I therefore respectfully recommend that both plaintiffs' unjust enrichment claims be dismissed with prejudice.

F.      **Plaintiffs' Breach of Express Warranty Claims (Count IV) Should Be Dismissed Without Prejudice Pursuant to Rule 12(b)(6)**

In order to recover on breach of warranty claim under either New York or Florida law, the buyer of the allegedly mislabeled product "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *In*

---

[20] The issue in *McNorton* was whether "the remedy at law must exist against the same person from whom the relief in equity is sought," 387 So. 2d at 399, and the court held that it must. *Id*. *McNorton* neither stated nor implied that there is an "unjust enrichment exception" to the general Florida rule that that "where a complaint shows on its face that there exists an adequate remedy at law, there is no jurisdiction in equity." *Id*.

*re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *27 (quoting N.Y. U.C.C. § 2-607(3)(a) and Fla. Stat. § 672.607(3)(a)). "The primary purpose of the notice requirement is 'to inform the seller that, even though his tender has been accepted by the buyer, his performance is nonetheless considered a breach of contract.'" *Id.* at *28 (quoting *E. Air Lines, Inc. v. McDonnell Douglas Corp.,* 532 F.2d 957, 971 (5th Cir. 1976)).

In *Frito-Lay*, the court dismissed breach of warranty claims brought by New York and Florida plaintiffs because they failed to allege when, if at all, they notified the defendant of the alleged breach. 2013 WL 4647512, at *27. Here, the parties do not dispute that plaintiffs, through their counsel, notified Pfizer of the alleged breach on February 22, 2016, approximately six and a half months before filing this action. *See* Compl. ¶ 58; Ans. ¶ 58. According to plaintiffs, this was "more than sufficient pre-suit notice." Pl. 12(b)(6) Opp. Mem. at 15. Plaintiffs, however, are focused on the wrong issue. The question is not whether they gave defendant enough notice before filing suit; it is whether they gave reasonably prompt notice "after [they] discover[ed] or should have discovered" the alleged breach. *See* N.Y. U.C.C. § 2-607(3)(a) ("Where a tender has been accepted . . . The buyer must within a reasonable time *after he or she discovers or should have discovered any breach* notify the seller of breach or be barred from any remedy.") (emphasis added); Fla. Stat. Ann. § 672.607(3)(a) (same). Moreover, "[t]he buyer bears the burden of showing that he gave the required notice within a reasonable time." *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1102 (11th Cir. 1983) (applying Florida law). To survive a motion to dismiss, therefore, a claim for breach of express warranty must allege facts from which "a jury could infer that the notice was both sufficient and timely." *Barron v. Snyder's-Lance, Inc.*, 2015 WL 11182066, at *18 (S.D. Fla. Mar. 20, 2015) (quoting *Royal Typewriter*, 719 F.2d at 1102). *Compare*, *e.g.*, *Barron*, 2015 WL 11182066, at *18 (warranty claim was sufficiently

pled under Florida law where plaintiff purchased defendant's products in June 2013 and sent a letter "notifying Defendant of its breach of express warranty" the following month); *with Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 261 (E.D.N.Y. 2014) (dismissing warranty claim under New York law because "the two to three years that the plaintiff allowed to pass from 'in or about 2010' [when she purchased the cosmetics at issue] until the time of her letter on July 3, 2013, constituted an unreasonable delay.").

Here, plaintiffs are silent as to when they purchased the Chapstick Products. They are equally silent as to when they discovered or should have discovered the alleged breach of warranty; that is, that the Products were not "100% NATURAL" or "Clinically Proven." Compl. ¶¶ 126-27.[21] Since plaintiffs fails to allege any facts that would permit the Court to conclude that they notified Pfizer of the alleged breaches within a reasonable time after discovering them, they are "barred from any remedy." *Frito-Lay*, 2013 WL 4647512, at *27 (quoting N.Y. U.C.C. § 2-607(3)(a) and Fla. Stat. § 672.607(3)(a)); *see also Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (dismissing warranty claims where "plaintiffs have failed to allege they provided Walgreens with timely notice of the alleged breach of warranty"). Because the deficiency in plaintiffs' pleading may be may be curable by amendment, however, I respectfully recommend that plaintiffs' express warranty claims be dismissed without prejudice. *See Hubbard v. Gen. Motors Corp.*, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996) (dismissing warranty claim under New York law for failure to allege notice but granting leave to replead).

---

[21] Since the presence of the "synthetic, unnatural" ingredients that allegedly give the lie to Pfizer's "100% natural" claims, *see* Compl. ¶¶ 6, 37, could be "discovered" simply by reading the back of the Chapstick Products package, the Court presumes that plaintiffs discovered or should have discovered the breach of warranty shortly after their initial purchase of those Products.

### G. Plaintiffs' Claims Fail to the Extent They Are Based on Advertising Materials Other Than the Chapstick Product Labels.

Plaintiffs allege that Pfizer made misleading statements about the Chapstick Products on the front of the product packages, in television commercials, and on the Products Website. Compl. ¶¶ 31-36. Both plaintiffs allege generally that they "viewed the labels and advertising, and regularly purchased the Mislabeled Chapstick Products." *Id.* ¶¶ 19-20. As to the labels – affixed to the Products themselves – plaintiffs go further, alleging that in deciding to purchase the Products they "saw and read the '100% NATURAL' and 'Clinically Proven' labels, and relied upon those representations in making their purchases." *Id.* ¶ 21. However, they make no comparable allegations concerning the television commercials or the Products Website. They do not identify any particular representations made to them via those channels. They do not claim that they made any purchases on the Products Website, nor that they relied on information conveyed via television or internet in making their purchases. It is not even clear from their pleading whether they "viewed" the non-label advertising before or after they made their purchases, much less which allegedly false claims or representations they saw, read, or heard through those channels.

To prevail on their negligent misrepresentation, breach of warranty, and NYGBL § 350 claims, plaintiffs must plead and prove that they relied on defendants' statements that the Chapstick Products are "100% NATURAL" and "Clinically Proven."[22] To prevail on their claims

---

[22] *See, e.g.*, *Tuosto v. Philip Morris USA Inc.*, 2007 WL 2398507, at *14 (S.D.N.Y. Aug. 21, 2007) (New York negligent misrepresentation plaintiff must show that he "reasonably relied" on defendant's alleged misrepresentation); *Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1319 (S.D. Fla. 2009) (Florida negligent misrepresentation plaintiff must show that he "justifiably relied on the false statement"); *Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, 2013 WL 93636, at *7 (S.D.N.Y. Jan. 9, 2013) (express warranty claims in New York "require some showing of reliance on the part of a plaintiff"); *Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687, 695 (S.D. Fla. 2010), *vacated on other grounds*, 635 F.3d 1279 (11th Cir. 2011) ("Under Florida's UCC, consumers may sue for breach of express warranty if a seller makes a false promise about goods, and the consumer relied on that promise in deciding to purchase the goods.'); *Ackerman*, 2010 WL

under NYGBL § 349 and the FDUTPA, plaintiffs need not allege reasonable or justifiable "reliance," but must still plead and prove causation.[23]

As to the Product labels, plaintiffs have adequately alleged facts which, if proven, would support the reliance and causation elements of their claims: that they "saw and read" the labels, and that in making their purchases they "relied upon" the alleged misrepresentations made on those labels. Compl. ¶ 21. The absence of any such allegations as to television or internet advertising, however, requires the dismissal of their claims insofar as they are based on statements or representations other than those made on the Chapstick Product labels. *See*, *e.g.*, *In re Ford Fusion & C-Max Fuel Econ. Litig*., 2015 WL 7018369, at *34 (dismissing both New York and Florida consumer protection claims "to the extent that individual Plaintiffs did not rely on any of the advertisements specifically alleged in the [amended complaint]"); *In re KIND LLC "Healthy & All Natural" Litig*., 209 F. Supp. 3d 689, 697 (S.D.N.Y. 2016) (dismissing all claims, including claims asserted under NYGBL and FDUTPA, to the extent based on the alleged misstatement that the products at issue were "non-GMO" on the ground that "no plaintiff alleges that they read and relied on the 'non-GMO' labeling statement prior to purchasing the products."); *Gale v. Int'l Bus. Machines Corp*., 9 A.D.3d 446, 447, 781 N.Y.S.2d 45, 47 (2d Dep't 2004) (affirming dismissal of

---

2925955, at *23 ("To prevail on a claim under GBL § 350, a plaintiff must demonstrate reliance on defendants' false advertising.").

[23] "Causation is an 'essential' element of any New York General Business Law section 349 claim." *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 446 (E.D.N.Y. 2015) (quoting *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F.Supp.2d 222, 234 (E.D.N.Y. 2013)). *See also*, *e.g.*, *JD & K Assocs., LLC v. Selective Ins. Grp., Inc*., 143 A.D.3d 1232, 38 N.Y.S.3d 658, 661 (N.Y. App. Div. 2016) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A*., 85 N.Y.2d 20, 26, 647 N.E.2d 741 (1995)) ("A claim asserted under NYGBL § 349 "does not require proof of justifiable reliance, [but] a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm.'"); *Prohias v. AstraZeneca Pharm., L.P.*, 958 So. 2d 1054, 1056 (Fla. Dist. Ct. App. 2007) (dismissing FDUTPA claim because, inter alia, plaintiff "fail[ed] to allege that Defendants' alleged wrongs caused her to purchase Nexium").

claims under NYGBL §§ 349 and 350 where plaintiff "nowhere states in his complaint that he saw any of [the allegedly misleading] statements before he purchased or came into possession of his hard drive," and "failed to allege that he relied on the statements or any advertisement at the time of his purchase"); *Murrin v. Ford Motor Co.*, 303 A.D.2d 475, 477, 756 N.Y.S.2d 596 (2d Dep't 2003) (affirming dismissal of New York breach of express warranty claim because "plaintiff failed to allege that he understood that the Ford advertisements . . . were part of the bargain or that he even was aware of any of these advertisements before his purchase, [and therefore] failed to allege an essential element of the formation of an express warranty pursuant to UCC 2-313.") (internal citation omitted).

Plaintiffs concede that, "to adequately allege causation, [they] must state in the complaint that they saw the misleading statements of which they complain before they came into possession of the products purchased," Pl. 12(b)(6) Opp. Mem. at 4-5 (citing *Rapcinsky*, 2013 WL 93636, at *6 n.3). Rather than dismiss even a portion of their claims, however, plaintiffs urge the Court to find their existing allegations "sufficient to meet the pleading standards for causation and reliance" as to Pfizer's non-label advertisements as well as the labels themselves. *Id.* at 5. Plaintiffs rely on *Goldemberg*, 8 F. Supp. 3d at 467, in which – they say – the court was willing to "infer" from general allegations, similar to those made here, that the plaintiff "was deceived into purchasing the products in question" not only by their misleading labels but also by defendants' website and Facebook page. Pl. 12(b)(6) Opp. Mem. at 6.

Unlike plaintiffs here, however, Michael Goldemberg expressly alleged that he was "deceived and misled" by all of Johnson & Johnson's "false, misleading, and deceptive misrepresentations and omissions" concerning its "Aveeno" products, including misrepresentations allegedly made on the Aveeno website and Facebook page. *Goldemberg*, 8 F.

Supp. 3d at 480. In the case at bar, plaintiffs Tyman and Robinson conspicuously fail to allege that they relied on, or even saw, Pfizer's non-label advertising. To the contrary: they explain in their brief that their allegations regarding the Products Website and the television commercials were "pleaded to provide context to the misrepresentations contained on the Products' labels." Pl. 12(b)(6) Opp. Mem. at 5. *Cf. Goldemberg*, 8 F.Supp.3d at 480 (citing *Gale*, 9 A.D.3d at 447) ("To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased."). To the extent not dismissed on other grounds, therefore, I respectfully recommend that all of plaintiffs' claims be dismissed, without prejudice, insofar as they are based on alleged misstatements or omissions in Pfizer's non-label advertising for the Products.[24]

## II.   THE MOTION TO STRIKE

As noted above, plaintiffs pleaded three of their claims – for negligent misrepresentation, unjust enrichment and breach of express warranty – on behalf of a putative Nationwide Class. Compl. ¶¶ 78-91, 125-151. In addition to its motion to dismiss these claims pursuant to Rule 12(b)(6), Pfizer filed a separate motion, pursuant to Fed. R. Civ. P. 12(f) and Fed. R. Civ. P. 23(d)(1)(D), to strike plaintiffs' nationwide class allegations on the ground that it would be "impossible to determine in a single proceeding whether Pfizer is liable to the proposed nationwide class as a whole." Def. Strike Mem. at 1, 6.

---

[24] At oral argument, counsel for Pfizer agreed that if plaintiffs amended their complaint to allege "that they saw ads, what did those ads say, those ads led us to purchase Chapstick," they would then adequately plead causation with respect to the advertisements they viewed and relied upon. *See* Hrg. Tr. at 17:4-5. It is not clear whether plaintiffs can truthfully so allege, but in my view they should be given an opportunity to do so. *See In re Ford Fusion & C-Max Fuel Econ. Litig.,* 2015 WL 7018369, at *40 (granting plaintiffs leave to amend their complaint "to specifically allege the advertisements that each of these Plaintiffs relied upon").

If Your Honor accepts my recommendations regarding the motion to dismiss, and dismisses all three claims underlying the nationwide class allegations, the motion to strike will be largely moot. *See* Def. Strike Mem. at 1 (seeking relief "[t]o the extent" plaintiffs' claims for negligent misrepresentation, unjust enrichment, and breach of warranty "survive Pfizer's motion to dismiss").[25] Moreover, if plaintiffs successfully amend their complaint to replead their breach of warranty claim (and if they once again seek to pursue that claim on behalf of a nationwide class), their class allegations can and should be evaluated in the context of all of the facts alleged in the amended pleading. *See Mayfield v. Asta Funding*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015) (to succeed on a pre-discovery motion to strike class allegations, a defendant must "demonstrate from the face of the complaint that it would be impossible to certify the alleged class"); *accord Greene*, 2017 WL 3327583, at *7; *In re Libor-Based Fin. Instruments Antitrust Litig.*, 2016 WL 2851333 (S.D.N.Y. May 13, 2016). I therefore recommend, respectfully, that the motion to strike be granted, but only because plaintiffs' nationwide class allegations are "immaterial," s*ee* Fed. R. Civ. P. 12(f), to their claims under the NYGBL and the FDUTPA. I further recommend that plaintiffs be given leave to replead their nationwide class allegations if and when they replead their breach of warranty claim.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the motion to dismiss (Dkt. No. 16) be GRANTED IN PART and that the following claims be DISMISSED:

---

[25] Plaintiffs' remaining claims, pleaded under the New York and Florida consumer protection statutes, are asserted on behalf of "sub-classes" limited to those who purchased the Chapstick Products in New York and Florida, respectively. *See* Compl. ¶¶ 79-80; 93, 104, 122. Pfizer's motion to strike does not challenge plaintiffs' allegations as to these limited classes.

(1)     Both plaintiffs' negligent misrepresentation claims (Count VI of the Complaint), with prejudice:

(2)     Both plaintiffs' unjust enrichment claims (Count V), with prejudice;

(3)     Both plaintiffs' breach of express warranty claims (Count IV), without prejudice; and

(4)     All of plaintiffs' remaining claims, to the extent they are based on non-label advertising, without prejudice.

I further recommend that the motion to dismiss be DENIED with respect to plaintiff Tyman's FDUTPA claim (Count III), which should remain for litigation along with plaintiff Robinson's claims under the NYGBL (Counts I and II).

Finally, I recommend that Pfizer's motion to strike plaintiffs' nationwide class allegations (Dkt. No. 18) be GRANTED, without prejudice to repleading if and when plaintiffs replead their breach of warranty claim.

Dated:     New York, NY
           December 27, 2017

                              **SO ORDERED**.

                              _____
                              **BARBARA MOSES**
                              **United States Magistrate Judge**


                    <u>**NOTICE OF PROCEDURE FOR FILING OBJECTIONS**</u>
                       <u>**TO THIS REPORT AND RECOMMENDATION**</u>

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). *See also*

Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Hon. Laura Taylor Swain at 500 Pearl Street, New York, New York 10007, and to the chambers of the Hon. Barbara Moses at the same address. Any request for an extension of time to file objections must be directed to Judge Swain. Failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).